THE PORTO RICO COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97338. Promulgated April 18, 1941.

*Harry Silverson, Esq.,* and *Malvern B. Fink, Esq.,* for the petitioner.

*Henry C. Clark, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency in income tax of $183.62, a deficiency in surtax of $1,305.65, and a penalty of $326.41 for the calendar year 1935. One issue has been settled by agreement. The principal issue for decision is whether the petitioner was a personal holding company within the meaning of section 351 (b) (1) of the Revenue Act of 1934. The issue of whether or not the petitioner is subject to a 25 percent penalty for failure to file a personal holding company return, Form 1120H, must be decided if the first issue is decided for the respondent. The facts have been stipulated.

The petitioner is a foreign corporation and was engaged during the taxable year in the business of selling coal in Porto Rico. Its gross income from sources without the United States, all of which was derived from the operation of the coal business, was $30,722.69, and it suffered a net loss of $14,192.06 from the operation of that business.

The petitioner maintained an office in the United States in New York and had investments in the United States consisting of stocks and bonds. The total gross income which it received from sources within the United States consisted of interest on bonds in the amount of $5,406.67 and gains from the sale of bonds in the amount of $2,451.53. The deductible expenses incurred in connection with the production of the income from sources within the United States amounted to $500.

The Berwind-White Coal Mining Co., a Pennsylvania corporation, owned all of the capital stock of the petitioner during the taxable year. The stock of the Berwind-White Coal Mining Co. was owned as follows:

|  | Percent |
| --- | --- |
| Edward J. Berwind, Inc., a Delaware corporation | 69. 796 |
| Estate of Harry A. Berwind | 18. 903 |
| Charles E. Dunlap | 6. 301 |
| Thomas Fisher | 5. 000 |

The stock of Edward J. Berwind, Inc., was owned 75 percent by Edward J. Berwind and 25 percent by Charles E. Dunlap. Harry

A. Berwind, who died in 1932, was a brother of Edward J. Berwind, and Charles E. Dunlap was their nephew. Thomas Fisher was not related to the other persons mentioned.

The Berwind-White Coal Mining Co. was engaged in the business of mining and selling coal. Its gross sales were in excess of $9,000,000 during 1935. It was not a personal holding company within the meaning of section 351.

The petitioner filed an income tax return for 1935 with the collector of internal revenue for the second district of New York, reporting its income from sources within the United States and stating that it was not a personal holding company. It filed no return on Form 1120H.

The Commissioner, in determining the deficiency, has held that the petitioner was taxable as a personal holding company. He explained that, in the case of a foreign corporation, only income derived from sources within the United States is considered in determining whether or not 80 percent of its gross income was derived from royalties, interest, and gains from the sale of stock or securities, and, since all of the income of the taxpayer from sources within the United States was derived from interest and gain from the sale of bonds, and since more than 50 percent of its stock was owned indirectly by not more than five individuals, it was taxable under section 351.

Section 351(b)(1)(A) provides that a corporation is a personal holding company if "at least 80 per centum of its gross income for the taxable year is derived from", *inter alia*, interest and the sale of securities. The petitioner concedes that all of its gross income from sources within the United States was from interest and gains from the sale of securities. It contends, however, that the term "gross income" as used in section 351(b)(1)(A) means, in the case of foreign corporations, gross income from all sources and not merely from sources within the United States. If the gross income of the petitioner from all sources is considered, then it is perfectly clear that section 351 has no application.

Section 351(b)(4) provides, "The terms used in this section shall have the same meaning as when used in Title I", and section 231(a) of Title I provides, "In the case of a foreign corporation, gross income includes only the gross income from sources within the United States." The Commissioner concludes that a foreign corporation is a personal holding company within the meaning of section 351(b)(1)(A) if at least 80 per centum of its gross income from sources within the United States is the kind of income described in that section, and, since all of the income of the petitioner from sources within the United States was of that sort, it is subject to

the surtax. We think, after an examination of the entire statute, that the words of the provisions upon which the Commissioner relies, when given their natural and normal meaning, amply support his conclusion.

The petitioner has found two places where the term "gross income" has been used in Title I to refer to gross income of a foreign corporation from all sources. It argues that gross income, as applied to a foreign corporation in Title I, has not one meaning, but two. The first is gross income from sources within the United States, which is the gross income of a foreign corporation subjected to normal tax. This it refers to as the "quantum" concept. The second meaning is gross income from all sources and is used for the purpose of classifying the foreign corporation according to the nature of its income. This it refers to as the "classification" concept. The petitioner then finds a use for each of these meanings in section 351, i. e., in determining the amount of undistributed adjusted net income which is subject to the surtax, quantum being at issue, it limits the term to gross income from sources within the United States, but in section 351(b)(1), classification being at issue, the term means income from all sources. It cites *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, to show that the same term, when used in different places in a statute, may have different meanings. The Court there said that although there is a natural presumption that identical words used in different parts of the same act must have been intended to have the same meaning, nevertheless, the presumption readily yields if circumstances show that different meanings were intended. The petitioner then argues that Congress in enacting section 351 did not intend to impose the surtax upon the income of bona fide operating companies received from investments of surplus funds but intended to reach only the "incorporated pocketbook" and force it to distribute its earnings to its stockholders or suffer the penalty.

This argument of the petitioner appears to be a strained and labored effort to create a doubt where none would naturally arise. Congress, in section 119(a)(1)(B) and (a)(2)(B), was using the term "gross income" to refer to the income of a foreign corporation from all sources, as an examination of those provisions will at once disclose. But that was a special meaning for the term in order to make clear the thought which Congress was there expressing. The general meaning of the term as used in Title I is found in section 231(a), and it seems reasonable to conclude that Congress meant that general definition to apply for all purposes except for the purpose of the two provisions already mentioned where the context clearly demonstrates a different intent. It follows that the meaning of the term as given in section 231(a) was intended, wherever the

term was used in section 351, to apply to foreign corporations. When the words of section 351 and those of 231(a) are read and given their natural interpretation in the light of all other provisions of the statute, including those of section 119, no doubt arises in the mind of the reader as to the intent of Congress.

The petitioner argues that the legislative history shows a different intent upon the part of Congress. It points generally to the legislative history of section 351 to show that Congress intended to force distribution of earnings by "incorporated pocketbooks" under penalty of the tax, but had no intention of penalizing operating companies, companies whose operations resulted in a loss, or foreign corporations receiving most of their income from operations. If the legislative history could be examined in order to create a doubt as to the meaning of the words used by Congress in section 351, and if it further appeared from that legislative history that Congress did not intend the section to apply to a corporation such as the petitioner, then resort might be had to the petitioner's logic to bring about the result so obviously intended by Congress. But here no doubt arises in the mind of one who merely reads the words of the statute. Furthermore, the legislative history does not adequately support the argument of the petitioner. Congress, in enacting section 351, apparently gave no special consideration to foreign corporations. The legislative history of the provision does not disclose what the attitude of Congress would have been had it thought specifically of foreign corporations.[1] Doubt arises for the first time when the question is asked what reason could Congress have had for applying the provision of section 351 to a foreign corporation merely upon the basis of its income from sources within the United States. But the Board has no right to resolve that doubt either one way or the other where the words of the statute are clear. Furthermore, the legislative history shows that Congress fully realized the broad scope of the language which it was using and specifically excluded certain types of corporations. Yet it failed to exclude foreign corporations. It is not unreasonable to conclude that Congress intended the provision to apply under circumstances like those here present. It permitted escape from the penalty of the tax to those corporations which would pay out their earnings in dividends and it likewise permitted escape where the shareholders would report their proper shares of undistributed earnings.

---

[1] Cf. Titles I and II of the Revenue Act of 1937. It is interesting to note that in amending Title IA of the Revenue Act of 1936, which corresponded to section 351 of the Revenue Act of 1934, Congress in section 352(b) inserted a specific provision excluding a foreign personal holding company and then enacted new provisions in Title II covering foreign personal holding companies.

The petitioner contends that even if it met the requirements of (A) of the definition of a personal holding company contained in section 351(b)(1), still it does not meet the requirements of (B), since there was no time during the taxable year when 50 percent of its stock was owned "directly or indirectly, by or for not more than five individuals." All of the stock of the petitioner was owned by the Berwind-White Coal Mining Co. The petitioner concedes that under the express provisions of (C) the Berwind-White Coal Mining Co. must be disregarded in determining the ownership of its stock for the purpose of (B). It contends, however, that the actual ownership may not be further disregarded and the result is that 69.796 percent of the stock of the petitioner must be regarded as owned by Edward J. Berwind, Inc. It cites no authority in support of this argument. It concedes, of course, that if Edward J. Berwind, Inc., is to be disregarded and the 69.796 percent of the stock is to be considered as owned proportionately by the shareholders of Edward J. Berwind, Inc., then the petitioner meets the requirements of (B). It reasons that Title IA of the Revenue Act of 1936 was just like Title IA of the Revenue Act of 1934; Congress in the Revenue Act of 1937 amended Title IA of the Revenue Act of 1936 by adding section 354, particularly (a)(1) and (5); this was done to close a loophole which resulted from the fact that section 351(b)(1) of the Revenue Act of 1936, like section 351(b)(1) of the Revenue Act of 1934, did not cover the situation where the stock ownership of the individuals had to be traced through a chain of two or more corporations. We regard the amendments as merely declaratory in this respect. Section 351(b)(1)(B) refers to stock owned directly or indirectly by not more than five individuals; the section then continues as follows:

For the purpose of determining the ownership of stock in a personal holding company—(C) stock owned, directly or indirectly, by a corporation * * * shall be considered as being owned proportionately by its shareholders * * *.

These provisions, when read in their entirety, mean that the ownership of the stock of the personal holding company is to be traced through corporations to the individuals who are the ultimate beneficial and indirect owners. There is nothing to indicate that this tracing is to stop at the first corporation. Applying (C), the stock of the petitioner is owned proportionately by the shareholders of the Berwind-White Coal Mining Co. Thus, Edward J. Berwind, Inc., owns 69.796 percent of those shares. Since this is so, (C) applies again and the shareholders of Edward J. Berwind, Inc., own those shares of the petitioner for the purpose of (B). This is the interpretation placed upon the provision by the Commissioner in Regulations 86, article 351–2. Cf. C. B. 1939–1, Part 2, p. 704, at pp.

708, 709. The Commissioner did not err in holding that the petitioner was subject to tax under section 351.

The final argument of the petitioner is that it is not subject to the penalty of 25 percent provided in section 291 for failure to file a return on Form 1120H since it filed a return on Form 1120 and stated thereon that it was not filing a personal holding company tax return because it had been advised by tax counsel that it was not required to file one, citing *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304. The Germantown Trust Co., a trustee, had filed an information return as fiduciary but had not filed a corporate income tax return on Form 1120, taking the position that it was a pure trust rather than an association taxable as a corporation. The Supreme Court held that the fiduciary return was sufficient to start the statute of limitations. The fiduciary and the corporate return would each relate to the same tax. But a different situation arises here. The Board has held in *Taylor Securities, Inc.*, 40 B. T. A. 696, that the income tax under Title I and the surtax under Title IA of the Revenue Act of 1934 are separate and distinct taxes requiring the filing of separate returns, and where no return has been filed, imposition of the penalty is mandatory. *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; *Lone Pine Lawn Corporation*, 41 B. T. A. 638; *Blenheim Co., Ltd.*, 42 B. T. A. 1248. See also *Noteman* v. *Welch*, 108 Fed. (2d) 206.

Reviewed by the Board.

*Decision will be entered under Rule 50.*