## PORTO RICO COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 89.

Circuit Court of Appeals, Second Circuit.

March 3, 1942.

Marvin Lyons and Francis Shackelford, both of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Samuel H. Levy, Sp. Assts. to Atty. Gen., for respondents.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is a foreign corporation organized under the laws of Puerto Rico where it was engaged during its taxable calendar year 1935 in selling coal. It sustained a net loss in that part of its business. It now admits that its stock was so held, however, that it was a personal holding company within § 351(b) (1) (A) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 757, provided it derived at least 80 per centum of its gross income from interest and gains from the sale of securities. The Commissioner, deciding that it was a personal holding company because of its receipt of that kind of income from sources within the United States, assessed the surtax and subjected it to a penalty for failure to file a personal holding company return. In so doing, he took no account whatever of the foreign gross income of the petitioner. The Board of Tax Appeals sustained the Commissioner and this petition to review its redetermination followed in due course.

During the taxable year, the petitioner maintained an office in this country and received gross income, from sources within the United States, of $7,858.20 from interest on bonds and gains from the sale of bonds. This was its entire domestic gross income and if that alone is to count in determining whether or not it was a personal holding company the decision under review is correct. The petitioner now concedes that the penalty was, in that event, properly imposed in accordance with our decisions in O'Sullivan Rubber Co. v. Commissioner, 2 Cir., 120 F.2d 845, and Lone Pine Lawn Corporation v. Helvering, 2 Cir., 121 F.2d 935. But if both its domestic income during the year and its Puerto Rican income for that period are to be lumped together, the part of the whole which was derived from bond interest and bond sales was less than 80% and, in that event, the decision both as to a deficiency and a penalty was obviously wrong. Its net loss from operating its coal business in Puerto Rico exceeded its entire United States income and it actually sustained an over-all net loss.

It is apparent that the decision of the Board has brought about a harsh result by imposing a surtax, to say nothing of the penalty for failure to file a return, upon a corporation which had no net income to distribute; but if it finds itself, because of the way it was organized and did its business, within the scope of a statute primarily designed to make the failure to distribute actual net income too expensive to be worth while and was, therefore, taxed when it did not in fact do what the statute was aimed to discourage it must endure its misfortune as best it may. As was said in O'Sullivan Rubber Co. v. Commissioner, supra [120 F.2d 847], "It is, * * * abundantly clear that Congress, in correcting an evil, is not narrowly confined to the specific instances which suggested the remedy." On the other hand, it is so clear that this is not one such instance that decision must turn upon whether or not the statute may reasonably be construed to permit the entire gross income of the petitioner to be taken into account, as it contends, in determining whether 80 per centum of its gross income was from the bond interest and gains from bond sales.

The Board held that the statute itself solved the problem by providing in § 351 (b) (4) of Title IA that, "The terms used in this section shall have the same meaning as when used in Title I"; and in § 231

(a) of Title I, 26 U.S.C.A. Int.Rev.Acts, page 737, that, "In the case of a foreign corporation gross income includes only the gross income from sources within the United States." At first blush, one would think that this plain statutory language did make the term "gross income" as used in § 351 of Title IA mean for the petitioner only its gross income from sources within the United States as § 231 of Title I seems to say it should mean.

But the petitioner says this is not so, nevertheless, because § 351(b) (4) of Title IA does not necessarily make the gross income of a foreign corporation for tax purposes always its domestic gross income only since the term "gross income" is not always given that meaning in Title I. And it is at least partly right for § 231(a) merely states the general rule. That is, indeed, all it undertakes to do. There are special instances in Title I where, as the petitioner points out, the term "gross income" of a foreign corporation is used to embrace all the corporate gross income both foreign and domestic. One is in § 119(a) (2) (B) of Title I, 26 U.S.C.A. Int.Rev.Acts, page 709, which provides a standard for the classification of a foreign corporation as one whose dividends will or will not be treated as income from sources within the United States depending upon whether or not 50 per centum of its gross income for a stated previous period was derived from sources within the United States as determined under the provisions of that section. The context here shows that "gross income" means gross income from sources both domestic and foreign. So, too, in § 251(a) of Supplement J. to Title I, 26 U.S.C.A. Int.Rev.Acts, page 739, which deals with the way income from sources within possessions of the United States shall be treated in determining the gross income of certain citizens of this country and of domestic corporations which are classified in that section by percentages of gross income derived from sources within a possession of the United States. The context makes it clear that the decisive proportions are those which the income from United States possessions bears to the gross income derived from all sources. That makes it possible to argue as the petitioner does, that when Congress used the term "gross income" in connection with classification of taxpayers for purposes of taxation it meant to include all income; and to draw the conclusion that,

as the issue here involves such a classification, there is a permissible choice as to the meaning of "gross income" which is that of entire income from all sources as in §§ 119 and 251.

This is, indeed, an ingenious way to make the best use of what may have been a slight over generalization in § 231 (a). But it·is really without substance because it is abundantly clear that in §§ 119 and 251 Congress was contrasting either foreign income or that from possessions of the United States with all the taxpayer's income regardless of its source. The purpose was to classify accordingly but only in those special instances. The general rule as shown by § 231(a) was otherwise unmodified, and so must be given its general application in the other sections of the statute. It was that, as the Board decided, which by virtue of § 351(b) (4) fixed the meaning of gross income as used in that section since nothing can there be found to indicate any intention to give it any different meaning for the special purpose of § 351. Where Congress so defined "gross income" in the 1934 Act we can but give effect to its plain language and uphold its purpose, so disclosed, to exclude the foreign gross income of foreign corporations in determining whether they are within the statutory definition of a personal holding company.

Affirmed.