## CEDARBURG CANNING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8665.

Circuit Court of Appeals, Seventh Circuit.

June 9, 1945.

Carl B. Rix, of Milwaukee, Wis. (Rix, Kuelthau & Kuelthau, of Milwaukee, Wis., of counsel), for petitioner.

Samuel O. Clark, Jr., Sewall Key, and John F. Costelloe, Asst. Attys. Gen., J. P. Wenchel and Rollin H. Transue, Bureau of Internal Revenue, both of Washington, D. C., A. F. Prescott and Newton K. Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before SPARKS, MAJOR and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Petitioner challenges a decision of the Tax Court sustaining the Commissioner's determination of its liability for surtaxes on its income for the year 1938 as a personal holding company, and imposing a 25% penalty for failure to file proper return as such. It asserts as error the finding of the Tax Court that it was a personal holding company within the meaning of the applicable statute; that its income was not used for the payment of debts or was not set aside to retire indebtedness; and that it had not shown that its failure to make and file a return as a personal holding company was "due to reasonable cause and not due to willful neglect."

The Tax Court found that petitioner was a corporation organized in 1908 and at that time it operated a large canning plant in Cedarburg, Wisconsin. Its stockholders were five members of the Wittenberg fam-

ily, three brothers, a sister, and their father. In addition to its plant, petitioner also owned several farms and 1000 shares of stock in the Cedarburg Fox Farms which it purchased in 1924 at a cost of $160,000, for a large part of which it gave its promissory notes.

About 1925 petitioner ceased functioning as an operating company and, with several other plants, entered into a merger, the Paver Company, deeding its plant in consideration for preferred stock of the new company. This company failed in 1927, and in 1930, the plant which had belonged to petitioner was transferred to a new company, Paver Canneries, and thereafter, Cedarburg Canneries, Inc., was organized and petitioner subscribed for its stock, giving its notes in payment therefor. One of the brothers was active in the operation of the Fox Farms and the other two in Canneries, Inc. In 1938, the latter corporation needed financial aid to pack an unusually large crop of peas. It had exhausted its line of bank credit and was also heavily in debt to the Fox Farms. Petitioner therefore loaned it $19,000, secured by warehouse receipts. In order to make this loan it borrowed $10,000 from a local bank and gave warehouse receipts as security. Petitioner's adjusted net income for the year 1938 was $9625.

The Tax Court also found that shortly after the Paver crash the Wittenberg brothers and their sister talked over petitioner's financial situation and decided as a general business policy that its income should be used to pay its debts but that no corporate action was taken to that effect; that on January 1, 1934, petitioner owed a total of a little over $100,000, and during the next four years it had paid off $54,873 and incurred new indebtedness of $330; and that during the taxable year of 1938 it did not use or irrevocably set aside any amount whatsoever to pay or retire any part of its indebtedness which had been incurred prior to January 1, 1934, the balance of which was then $45,587—instead, it incurred new indebtedness in the amount of $10,080 and paid off indebtedness incurred in 1937 in the amount of $330. It paid no dividends during 1938 or before March 15, 1939.

Under these facts the Tax Court found that petitioner was clearly a personal holding company as that term is defined in § 402 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1130,[1] and since it had not used or irrevocably set aside its income to pay any pre-1934 indebtedness it could not be permitted to reduce its undistributed Title IA net income by amounts claimed under § 405(b), 26 U.S.C.A. Int.Rev.Acts, page 1133.[2]

Petitioner earnestly contends that the transactions of 1938 whereby it loaned some $9000 of its income and borrowed an additional $10,000 from a local bank for the use of its subsidiary in fact constituted a use or setting aside of its income for payment of indebtedness. It describes this as a setting aside of the income in another form of property: "In 1938 for a perfectly normal business reason the payment in cash was suspended and the cash on hand was converted to a note receivable of Cedarburg Canneries, Inc. secured by collateral, and in 1939 to a note receivable of James Wittenberg, also secured by collateral. That note and the collateral in 1939 were and now are available for distribution to the creditors. That asset was set aside for creditors." We know of no principle of law whereby debts can be paid or money be set aside for their payment in such manner. That petitioner had in previous years and did in subsequent years use its income to retire its debts is immaterial as to this year when it used such income to make a loan to a subsidiary which was not repaid nor the fund made available for payment of debts during the year or up to March 15 of the following year. Uniformity of policy in preceding or succeeding years is of no avail when that policy was deviated from during the year in question. Reduction of undistributed net income is

---

[1] § 402. "(a) General rule.—For the purposes of this title * * * the term 'personal holding company' means any corporation if—

"(1) Gross income requirement.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 403 * * *; and

"(2) Stock ownership requirement.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals." ·

[2] § 405(b). "Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness."

allowed only in an amount actually used or set aside for payment of debts, and none of the cases cited and relied upon by petitioner to support its proposition that what it did in the taxable year constituted a setting aside of a fund is in any way analogous on its facts.[3] Here the transaction simply amounted to a use of income in the business of one of petitioner's subsidiaries. We think the Tax Court was correct in holding that such a use does not constitute a setting aside under the terms of the statute.

■ Petitioner also contends that it was entitled to exemption from the surtax imposed on the theory of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, in reverse. Its theory as to this is that since the taxpayer in that case was denied an exemption under a reorganization which complied strictly with a statutory provision but which had no business purpose apart from evasion of the tax provided by the statute, petitioner should be allowed exemption from the tax here involved on the ground that its corporate organization had no purpose of tax avoidance. This is not a tenable theory. Certainly the motive for which a corporate form is adopted is far from the sole criterion of taxability of that corporation. The fact that one corporation is not permitted to escape the incidence of a tax by resort to an elaborate scheme of corporate organization having no business purpose apart from that of tax avoidance does not mean that another corporation may escape a tax imposed by a different statute on the ground that it did not choose its form of corporate organization for purposes of tax evasion. As appellee states, the Gregory case has no application here since a tax evasion motive is unnecessary to bring a case under the taxing provisions of Title IA, 26 U.S.C.A. Int.Rev.Acts, page 1129 et seq., and this taxpayer comes squarely within the provisions of that Title.

■ Petitioner also contests the imposition of a 25% penalty. Section 291

of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1109, provides that in case of any failure to make and file a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, a penalty of 5% for each thirty days of delinquency but not exceeding 25% in the aggregate shall be imposed. The statute thus makes imposition of the penalty mandatory in the absence of a showing of facts permitting relief therefrom. As to this the Tax Court stated " * * * petitioner has not shown that such failure was 'due to reasonable cause and not due to willful neglect.' In fact it has offered no direct testimony whatsoever bearing upon its failure to file a personal holding company return on Form 1120H. The most that we could do in this state of the evidence would be to infer from the evidence as a whole that petitioner, in good faith, did not believe that it was a personal holding company in 1938 but this is not enough to avoid the delinquency penalty provided by the statute. * * * Under the evidence in the record we see no escape from the imposition of the 25 per cent delinquency penalty which the Commissioner has imposed. * * *"

■■ Petitioner urges that it should be relieved of the payment of the tax on the ground that, "This is a case of pure hardship outside of the intent of Congress in enacting the personal corporation tax provisions." It is true that the result in this particular case is undoubtedly a hardship such as Congress may not have had in mind in enacting the statute. However, it is the type of hardship which sometimes follows an attempt to remedy a serious evil by drastic measures. The evil sought to be remedied by the statute here involved was the "incorporated pocket book," and the remedy was the automatic levying of large surtaxes against all companies which fell within the statutory definition and had undistributed net income. (For a discussion of the history and purposes of the legislation, see Commissioner of Internal Rev-

---

3 Hughes & Co. v. Commissioner of Internal Revenue, 8 Cir., 109 F.2d 720 ($10,-000 actually paid on debt, hence "used" as was true of this petitioner in preceding and succeeding years); Commissioner of Internal Revenue v. Sun Life Pipe Line Co., 3 Cir., 126 F.2d 888 (principal question whether holding company entitled to reduction of net undistributed income by amount set aside to retire portion of debt incurred prior to 1934 but refinanced thereafter); Piermont Corp. v. Commissioner of Internal Revenue, 43 B.T.A. 770 (securities delivered over to be held in separate account as a sinking fund to retire debentures); Prudential Finance Corp. v. Commissioner of Internal Revenue, 46 B.T.A. 796 (pursuant to corporate resolution fund actually set up on the books and holders of certificates of indebtedness could obtain it by demand in writing).

enue v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684; O'Sullivan Rubber Co. v. Commissioner of Internal Revenue, 2 Cir., 120 F.2d 845.) Such statutes are to be strictly construed. Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S. Ct. 109, 85 L.Ed. 29.

We agree with the Tax Court that under the facts of this case, petitioner was liable for the surtax imposed upon it as a personal holding company, and for the penalty for failure to file return as such.

Decision affirmed.