KENNETH FARMER DARROW, TRUSTEE FOR THE CREDITORS
AND SHAREHOLDERS OF RENDAR ENTERPRISES, LTD., A
DISSOLVED CORPORATION, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 8144-71.    Filed May 14, 1975.

*Richard L. Griffith,* for the petitioner.
*Eugene H. Ciranni,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $16,249.17 in petitioner's 1968 fiscal year Federal income taxes. The issue which we must decide is whether petitioner is liable for the 70-percent personal holding company tax imposed by section 541, I.R.C. 1954.[1]

### FINDINGS OF FACT

All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are detailed below.

Kenneth Farmer Darrow (hereinafter referred to as petitioner) was trustee for the shareholders and creditors of Rendar Enterprises, Ltd. (Rendar), at the time the petition herein was filed and also at the time of trial. On the date the petition herein was filed, Rendar's mailing address was in Honolulu, Hawaii. Rendar filed a corporate income tax return for its fiscal year ending July 31, 1968, with the District Director of Internal Revenue, Honolulu, Hawaii.

On March 27, 1968, the board of directors of Rendar voted to pay a dividend of 40 cents a share, or a total of $2,000, on September 30, 1968, to shareholders of record on July 31, 1968.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

Such declaration was made by the directors in an attempt to avoid personal holding company classification for the corporation's 1968 fiscal year. Payment of the dividend was delayed until September, however, on the advice of Rendar's firm of certified public accountants, experienced in tax matters. Such firm had served as Rendar's accountants since the corporation was organized and, on the date of the directors' meeting, was in possession of all information concerning the declared dividend. It was the opinion of such firm, communicated to Rendar's board prior to the close of its 1968 fiscal year that payment of the dividend, if accomplished at any time up to 2½ months after the close of Rendar's fiscal year on July 31, 1968, would prevent the imposition on Rendar of the personal holding company tax for such fiscal year.

Rendar's board of directors relied in good faith on their accountants' advice as to all matters relating to the declaration and payment of the dividend described above. Pursuant to such advice, Rendar, while financially capable of paying the $2,000 dividend on March 27, actually paid the dividend on September 27, 1968. No dividends were actually paid by Rendar during its fiscal year ending July 31, 1968. The $2,000 dividend was divided in equal amounts between Rendar's two 50-percent shareholders, petitioner and Renee Liddle, each of whom included the $1,000 dividend received on their respective 1968 calendar year Federal income tax returns.

Over 80 percent of Rendar's gross income in fiscal 1968 was comprised of rents, and the parties do not dispute that, if we hold that less than $1,548.52 of the above-described dividend can be deemed as having been paid during its 1968 fiscal year, Rendar was a personal holding company during 1968 and subject to the section 541 imposition as determined by respondent.

On June 8, 1969, a dissolution resolution was adopted at a special meeting of Rendar's shareholders. The Hawaii office of the Director of Regulatory Agencies issued a decree of dissolution for Rendar on August 6, 1969.

In his statutory notice of deficiency respondent determined that Rendar, during its 1968 fiscal year, was a personal holding company described in section 542(a) of the Code. He further determined that Rendar had undistributed personal holding company income during such year (undisputed as to amount) which was subject to the 70-percent imposition of section 541.

OPINION

We must decide in the instant case whether Rendar is liable for the 70-percent personal holding company (phc) tax provided for by section 541. Pursuant to such section, a tax equal in amount to 70 percent of a phc's undistributed phc income is imposed on such phc in addition to any other taxes for which the phc may be liable under other sections of the Code.

The actual issue upon which Rendar's tax liability rests is a very narrow one: whether or not, under section 563, at least $1,548.52 of the dividend paid to Rendar's two 50-percent shareholders on September 27, 1968, may be deemed as having been paid on the last day of Rendar's 1968 fiscal year, July 31, 1968.

Under section 543(a)(2) of the Code, personal holding company income includes the adjusted income from rents unless certain conditions are met.[2] In the instant case, the parties do not dispute that the condition specified in section 543(a)(2)(B) cannot be met unless we find that at least $1,548.52 of the above-mentioned dividend was paid on the last day of Rendar's 1968 fiscal year. If such condition is not met, the parties again do not dispute that Rendar would have been a phc because of section 542(a),[3] and liable for the 70-percent imposition of section 541 as

---

[2] SEC. 543. PERSONAL HOLDING COMPANY INCOME.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of:
* * *
(2) RENTS.—The adjusted income from rents; except that such adjusted income shall not be included if—
(A) such adjusted income constitutes 50 percent or more of the adjusted ordinary gross income, and
(B) the sum of—
(i) the dividends paid during the taxable year (determined under section 562),
(ii) the dividends considered as paid on the last day of the taxable year under section 563(c) (as limited by the second sentence of section 563(b)), and
(iii) the consent dividends for the taxable year (determined under section 565), equals or exceeds the amount, if any, by which the personal holding company income for the taxable year (computed without regard to this paragraph and paragraph (6), and computed by including as personal holding company income copyright royalties and the adjusted income from mineral, oil, and gas royalties) exceeds 10 percent of the ordinary gross income.

[3] SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if—
(1) ADJUSTED ORDINARY GROSS INCOME REQUIREMENT.—At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and
(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or

determined by respondent.

Petitioner did not even attempt, on brief, to argue that any statutory language supports his position that any part of the $2,000 dividend, paid on September 27, 1968, should be deemed as having been paid on the last day of Rendar's 1968 fiscal year. Indeed, the statute clearly points to the contrary conclusion. Section 563(c) provides, in substance, that for phc tax purposes, a dividend paid within 2½ months after the close of the taxpayer's taxable year will be considered as having been paid "on the last day of such taxable year." While the $2,000 dividend declared by Rendar's board on March 28 was actually paid within such period, section 543(a)(2)(B)(ii) further provides that the amount to be considered as paid on the last day of the fiscal year is subject to the limitation posited in the second sentence of section 563(b). Such limitation is as follows:

The amount allowed as a dividend by reason of the application of this subsection with respect to any taxable year shall not exceed either—
  (1) The undistributed personal holding company income of the corporation for the taxable year, computed without regard to this subsection, or
  (2) 10 percent [4] of the sum of the dividends paid during the taxable year, computed without regard to this subsection.

Petitioner paid no dividends during its 1968 fiscal year and thus is not entitled to claim that any part of the dividend paid subsequent to the close of its fiscal year is eligible for the special treatment provided for by section 563(c).

Petitioner makes basically two arguments against such an apparently straightforward reading of the statute. He first contends that, because the dividends paid on September 27 were included by Rendar's two 50-percent shareholders in their own personal income tax returns for the calendar year 1968, the abuses which Congress attempted to remedy by the phc provisions are simply not present in the instant case. Hence, petitioner asserts it is appropriate, in the instant case, to allow the subsequently paid dividend to be considered as having been paid during Rendar's 1968 fiscal year in order to prevent the imposition of the 70-percent tax. Congress, however, has given us virtually no leeway to consider such a position. The clear import of the second

---

indirectly, by or for not more than 5 individuals. * * *
4 For all taxable years beginning after Dec. 31, 1969, the applicable percentage is 20 percent. Pub. L. 91-172, sec. 914(a).

sentence of section 563(b) is that if a company fails to actually pay any dividends during its fiscal year, then it is not entitled to rely on section 563(c) in having dividends paid subsequent to the fiscal year considered as having been paid during such fiscal year. When the congressional language is so clear, arguments such as petitioner's are in effect requesting us to rewrite a section of the Code, an action we simply cannot take in the instant situation.

Petitioner finally argues that because the 70-percent tax may be, and has been described as a penalty-type imposition (*Pembroke Realty & S. Corp. v. Commissioner*, 122 F. 2d 252, 253 (2d Cir. 1941), revg. 42 B.T.A. 341 (1940); *Sicanoff Veg. Oil Corp. v. Commissioner*, 251 F. 2d 764, 770 (7th Cir. 1958), revg. 27 T.C. 1056 (1957); S. Rept. No. 558, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 586, 596), that its assessment should not be permitted when as here the taxpayer can show that its failure to escape the clutches of the statute was due to reasonable cause. The phc provisions, however, contain no mention of a reasonable cause standard for determining a taxpayer's phc status and liability, and we must again reject petitioner's efforts to have us legislate in these matters.

In enacting the phc surcharge in the Revenue Act of 1934, it was the congressional intent to set forth specific standards for the determination of whether or not a company should be deemed a phc and taxed accordingly. If a company meets the criteria set down by Congress in the statute, the imposition of the tax is to follow without further question: "The effect of this system recommended by your committee is to provide for a tax which will be automatically levied upon the holding company without any necessity for proving a purpose of avoiding surtaxes. It is believed that the majority of these corporations are in fact formed for the sole purpose of avoiding the imposition of the surtax upon the stockholders." H. Rept. No. 704, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 554, 563. See also S. Rept. No. 558, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 586, 597.

Relying upon this language in the legislative history, we and other courts have been consistent in holding that the phc provisions must be applied strictly in order to fulfill this expression of congressional intent. *O'Sullivan Rubber Co. v. Commissioner*, 120 F. 2d 845, 848 (2d Cir. 1941), affg. 42 B.T.A. 721 (1940); *Litchfield Securities Corp. v. United States*, 325 F. 2d 667 (2d Cir. 1963), cert. denied 377 U.S. 931 (1964); *Cedar-*

*burg Canning Co. v. Commissioner*, 149 F. 2d 526, 528-529 (7th Cir. 1945), affg. a Memorandum Opinion of this Court; *Kurt Frings Agency, Inc.*, 42 T.C. 472, 477 (1964), affd. per curiam 351 F. 2d 951 (9th Cir. 1965). Despite any harshness or other subjective factors which may be present, if a company fits the literal description of a phc contained in the Code, and if it has undistributed phc income as defined in the statute, imposition of the 70-percent tax is a matter of course. *Porto Rico Coal Co. v. Commissioner*, 126 F. 2d 212, 213 (2d Cir. 1942), affg. 44 B.T.A. 221 (1941); *Coshocton Securities Co.*, 26 T.C. 935, 939 (1956).

In light of the above long-standing authority, we can accord very little attention to petitioner's request that we allow a taxpayer to escape phc characterization if he can show "reasonable cause" for having failed to avoid the grasp of the statute. Such a rewriting of the statute would clearly impinge upon the automatic quality of the phc provisions which Congress intended, an intent which has caused the courts, as described above, to consistently refuse to take into account subjective factors in determining the applicability of the phc provisions to individual cases.

Petitioner also argues that there is a "general policy" in the tax law, as interpreted by the courts, which requires that taxpayers be allowed a reasonable cause defense in the case of penalty-like provisions such as section 541. Petitioner, however, does not support his theory that, as a general matter, penalty-like provisions in the Code are or should be subject to a reasonable cause standard. He instead relies solely on case law interpreting section 6651(a), which section explicitly provides for the taxpayer a "reasonable cause" escape route from the penalty imposed by that section. See also sec. 6652(a). The phc provisions, on the other hand, posit no such reasonable cause defense for a taxpayer attempting to contest the imposition of the 70-percent tax. Thus, cases dealing with section 6651 are simply not in point in considering the proper interpretation and application of section 541.

Indeed, an examination of the history of section 6651(a) clearly refutes petitioner's theory that all penalty-like provisions must have read into them a "reasonable cause" defense. Prior to 1936, the predecessor to section 6651(a) did not contain the "reasonable cause and not due to willful neglect" language as to "failure to file," which is today contained in section 6651(a)(1). In interpreting this earlier section, the courts uniformly held

that if a return was never filed the imposition of the penalty was mandatory, and considerations of "reasonable cause" were irrelevant. *Commissioner v. Lane-Wells Co.,* 321 U.S. 219, 224-225 (1944); *Axel Holmstrom,* 35 B.T.A. 1092, 1105 (1937), affd. 94 F.2d 747 (3d Cir. 1937); *Scranton, Lackawanna Trust Co., Trustee,* 29 B.T.A. 698, 702 (1934), affd. per curiam 80 F. 2d 519 (3d Cir. 1935), cert. denied 297 U.S. 723 (1936). It was only after the Revenue Act of 1936 had specifically posited a "reasonable cause" standard for taxpayers who had failed to file a return that the courts began applying such a standard. *Commissioner v. Lane-Wells Co., supra* at 224-225. In the instant case, we too feel constrained to await the lead of Congress before applying any reasonable cause standard in the phc situation.

At most, courts which have characterized section 541 as imposing a penalty, have demanded a very strict reading of the phc provisions before allowing the imposition of the 70-percent tax. *Sicanoff Veg. Oil Corp. v. Commissioner,* 251 F. 2d at 764. *Frelbro Corp. v. Commissioner,* 315 F. 2d 784, 788 (2d Cir. 1963), revg. 36 T.C. 864 (1961). We are very sympathetic toward petitioner's position, but on the facts of the instant case we must hold that the phc provisions, strictly read, do not allow any dividends paid after the close of Rendar's 1968 fiscal year to be deemed as having been paid on the last day of such fiscal year pursuant to section 563(c).

*Decision will be entered for the respondent.*