JACQUELINE SUNDSTROM TRUST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jacqueline Sundstrom Trust v. Commissioner
Docket No. 449-79.
United States Tax Court
T.C. Memo 1981-356; 1981 Tax Ct. Memo LEXIS 381; 42 T.C.M. (CCH) 358; T.C.M. (RIA) 81356; July 13, 1981. Albert L. LeDeuc, for the petitioner. Marc J. Winter, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined that petitioner, as a transferee of assets, is liable for personal holding company tax deficiencies in the transferor's Federal income taxes of $ 5,956 and $ 4,051 for the transferor's taxable years ending July 31, 1974, and July 31, 1975, respectively. Since petitioner concedes that it is a transferee within the meaning of section 6901, [1] the only issue is whether petitioner's transferor was liable for the personal holding company taxes asserted. *386 All the facts have been stipulated and are found accordingly. At the time its petition was filed in this case, petitioner's address was in Los Angeles, Calif.
Petitioner, the Jacqueline Sundstrom Trust, is a trust created in 1962 by Mrs. Jacqueline Sundstrom (hereinafter Mrs. Sundstrom) for the benefit of her children. Prior to her death, Mrs. Sundstrom owned all the common stock of Camera Productions, Inc. (hereinafter Camera). In 1973, she amended the Jacqueline Sundstrom Trust (hereinafter petitioner) directing that, upon her death, the trustees were to dissolve Camera as soon as possible and transfer Camera's assets to petitioner. Mrs. Sundstrom died on January 11, 1975; Camera was dissolved on December 19, 1975; all Camera's assets were transferred to petitioner; and Camera's last Federal income tax return was filed on February 24, 1976. Camera was formed in 1961 to produce motion picture films. It operated on a fiscal year ending July 31. For its fiscal year ending July 31, 1974 (FYE 7/31/74), Camera reported income of $ 11,940 made up as follows: Rents
$ 7,980
Dividends
3,629
Interest
319
Other income
12
For its fiscal year ending July 31, 1975 (FYE *387 7/31/75), Camera reported income of $ 12,736 made up as follows: Rents
$ 7,980
Dividends
4,373
Interest
383
Camera made the following cash distributions: Distributee
Date
Amount
Mrs. Sundstrom
Sept. 5, 1973
$ 400
Mrs. Sundstrom
Sept. 11, 1974
2,800
Petitioner
Sept. 11, 1975
3,500
Those distributions were included as ordinary dividend income by the distributees in the distributees' Federal income tax returns for the years the distributions were received. Camera did not file personal holding company returns for its taxable years ending in 1974 and 1975; nor did it identify itself as a personal holding company on its Federal income tax returns filed for those years. Thus, Camera did not calculate or report any section 561 dividends paid deduction. In a statutory notice of deficiency sent to Camera on October 14, 1978, respondent determined that Camera owed personal holding company taxes of $ 5,956 and $ 4,051 for its fiscal years ending July 31, 1974, and July 31, 1975, respectively. However, Camera's assets had been transferred to petitioner by the time the notice was sent; and Camera did not possess sufficient assets to *388 satisfy the asserted deficiencies. Accordingly, Camera did not pay the asserted deficiencies nor did it file a petition in this Court. On October 14, 1978, respondent issued a statutory notice of deficiency to petitioner asserting that petitioner, as transferee of Camera's assets, was liable for the personal holding company taxes previously asserted against Camera. Petitioner concedes that it is a transferee of assets within the meaning of section 6901. Thus, the only issue for decision is whether the personal holding company tax deficiencies were properly determined against Camera--petitioner's transferor. If they were, petitioner is liable for the asserted deficiencies. Section 541 imposes on every personal holding company a tax equal to 70 percent of the company's "undistributed personal holding company income." A corporation is a personal holding company if at least 60 percent of its "adjusted ordinary gross income" (AOGI) for the taxable year is "personal holding company income" (PHC income) and, at any time during the last half of the taxable year, five or fewer individuals owned *389 at least 50 percent in value of its outstanding stock. Sec. 542(a). [2] Petitioner does not contest whether the stock ownership test was met in each of the fiscal years involved herein. [3] Therefore, the outcome of this case depends on whether 60 percent of Camera's AOGI in each of those years was PHC income. *390 AOGI is defined as "ordinary gross income" (OGI) with certain adjustments not applicable in this case. Sec. 543(b)(2). Thus, in this case AOGI is the same as OGI. OGI is gross income excluding all capital gains, all section 1231 gains, and certain foreign corporation income. Sec. 543(b)(1). The parties agree that Camera had AOGI for its fiscal years ending July 31, 1974, and July 31, 1975, as follows: FYE 7/31/74
[4] $ 11,928
FYE 7/31/75
12,736
For each year in issue, the parties disagree as to whether 60 percent of the above amounts was PHC income. In very general terms, PHC income is the portion of AOGI which consists of dividends, interest, royalties, and certain rents. Sec. 543(a). The parties agree that the dividends and interest received *391 by Camera ($ 3,948 in FYE 7/31/74 and $ 4,756 in FYE 7/31/75) were PHC income. They disagree as to whether the rents received in those years ($ 7,980 in FYE 7/31/74 and $ 7,980 in FYE 7/31/75) were also PHC income. [5]
Adjusted income from rents is included in a year's PHC income unless that rental income constitutes 50 percent or more of the AOGI and the dividends attributable to the year equal or exceed an amount calculated by subtracting 10 percent of the OGI from the PHC income determined without rents. Sec. 543(a)(2). In this case, rents comprised more than 50 percent of Camera's AOGI income in each year. The only question is whether there were sufficient dividends attributable to each of those years to permit exclusion of rents from PHC income. To be excluded dividends must have been at least $ 2,755 in FYE 7/31/74 [$ 3,948 (PHC income without rents) - $ 1,193 (10% of OGI)] and at least $ 3,482 in FYE 7/31/75 [$ 4,756 (PHC income without rents) - $ 1,274 (10% *392 of OGI)]. If rental income was excludable from PHC income in those years, Camera was not a personal holding company. Section 543(a)(2)(B) provides that the amount of dividends attributable to a taxable year is the sum of: (i) the dividends paid during the taxable year (determined under section 562), (ii) the dividends considered as paid on the last day of the taxable year under section 563(c) (as limited by the second sentence of section 563(b)), and (iii) the consent dividends for the taxable year (determined under section 565), [Emphasis added.] Thus, there are three types of dividends attributable to a taxable year for the purpose of determining whether rents are excluded from PHC income: dividends paid during the taxable year, dividends treated as paid on the last day of the taxable year under section 563(c), and section 565 consent dividends. Only the first two types are involved in this case. Camera paid the following dividends relevant to this case: Sept. 5, 1973
$ 400
Sept. 11, 1974
2,800
Sept. 11, 1975
3,500
The parties agree that the $ *393 400 dividend paid on September 5, 1973 is attributable to FYE 7/31/74. See secs. 543(a)(2)(B)(i) and 562(a). Petitioner maintains that the $ 2,800 dividend paid on September 11, 1974 is allocable to FYE 7/31/74 and the $ 3,500 dividend paid on September 11, 1975 is allocable to FYE 7/31/75. The basis of petitioner's contention is that under sections 543(a)(2)(B)(ii) and 563(c), dividends paid within 2-1/2 months after the close of a taxable year are treated as paid on the last day of the closed year for the purpose of determining if enough dividends were paid to allow the exclusion of rents from PHC income under section 543(a)(2). If petitioner were correct, the dividends allocable to each year involved ($ 3,200 in FYE 7/31/74 and $ 3,500 in FYE 7/31/75) would be sufficient to cause the exclusion of rents from PHC income which would in turn prevent Camera from being classified as a personal holding company since 60 percent of Camera's AOGI would not be PHC income. Respondent contends that, since Camera did not elect to carry dividends paid after the close of a taxable year back to the closed taxable year pursuant to section 563(b), those dividends are allocable to the taxable *394 year in which they were actually paid pursuant to sections 562(a) and 543(a)(2)(B)(i). Thus, according to respondent, the dividends allocable to the taxable years involved herein ($ 400 in FYE 7/31/74 and $ 2,800 in FYE 7/31/75) are insufficient to prevent rents in those years from being classified as PHC income. Alternatively, respondent maintains that, even if an election to carry back dividends paid after the close of the taxable year is not necessary for the purpose of exclusing rents from PHC income under section 543(a)(2), the amount which can be carried back is so restricted by section 563(b) (second sentence) that there were still insufficient dividends attributable to either year to permit the exclusion of rents from PHC income. If respondent is correct on either of his points, Camera was a personal holding company for the years involved herein because PHC income, including rents, made up at least 60 percent of Camera's AOGI in those years. We agree with respondent's alternate contention and, therefore, find it unnecessary to decide whether an election to carry back dividends paid after the close of a taxable year is necessary for purposes of the section 543(a)(2) rent *395 exclusion test. [6]
The dividends in controversy are the $ 2,800 dividend paid on September 11, 1974, and the $ 3,500 dividend paid on September 11, 1975. Petitioner argues that those dividends are to be carried back in full to Camera's respective taxable years closed on the July 31st preceding their payment under section 543(a)(2)(B)(ii). However, even if we assume for the purposes of argument that such a carryback is proper absent an affirmative *396 election by the taxpayer-corporation, we nevertheless conclude that the amount which may be carried back is so restricted by section 563(b) (second sentence) that any carryback would be insufficient to meet the dividend requirement of the section 543(a)(2) rent exclusion test. Section 563(b) provides rules for carrying back dividends to a closed taxable year for purposes of the dividends paid deduction. The second sentence of that section, which is expressly incorporated by section 543(a)(2)(B)(ii), provides: The amount allowed as a dividend by reason of the application of this subsection with respect to any taxable year shall not exceed either-- (1) The undistributed personal holding company income of the corporation for the taxable year, computed without regard to this subsection, or (2) 20 percent of the sum of the dividends paid during the taxable year, computed without regard to this subsection. Thus, the dividends paid after the close of a taxable year may be carried back only to the extent they do not exceed either the taxpayer-corporation's undistributed PHC income *397 for the closed taxable year or an amount equal to 20 percent of the dividends actually paid during the closed taxable year without reference to section 563(b). The dividends actually paid during the taxable years involved herein were as follows: FYE 7/31/74
$ 400
FYE 7/31/75
2,800
Therefore, the maximum amount which could have been carried back to the FYE 7/31/74 was $ 80, or 20 percent of $ 400. Such a carryback would result in dividends of $ 480 ($ 400 + $ 80) being attributable to the FYE 7/31/74 for purposes of the section 543(c)(2) rent exclusion test. However, as discussed on page 6, supra, dividends of at least $ 2,755 would have to be attributable to Camera's FYE 7/31/74 before rents could be excluded from Camera's PHC income for that year. In short, $ 480 in dividends would be insufficient to cause the exclusion of rental income from PHC income for Cmaera's FYE 7/31/74. Accordingly, Camera was a PHC for its FYE 7/31/74, and the personal holding company tax deficiency for that year was properly asserted. [7]
*398 Likewise, while $ 3,500 in dividends were paid within 2-1/2 months of the close of Camera's FYE 7/31/75, that entire amount could not be carried back to the FYE 7/31/75 because of the amount restrictions imposed by section 563(b) (second sentence). The maximum amount which could have been carried back to the FYE 7/31/75 was $ 560, or 20 percent of $ 2,800 (the amount of dividends actually paid during the FYE 7/31/75). [8] Such a carryback would result in dividends of $ 3,360 ($ 2,800 + $ 560) being attributable to the FYE 7/31/75 for purposes of the section 543(a)(2) rent exclusion test. However, as discussed on page 6, supra, dividends of at least $ 3,482 would have to be attributable to Camera's FYE 7/31/75 before rents could be excluded from Camera's PHC income for that year. Therefore, $ 3,360 in dividends would be insufficient to cause the exclusion of rents from PHC income for Camera's FHY 7/31/75. Accordingly, Camera was a PHC for its FYE 7/31/75, and the personal holding company tax deficiency for that year was properly asserted. [9]
*399 We realize our result may seem harsh, especially for Camera's FYE 7/31/75 when the attributable dividend amount and the required dividend amount are only separated by a few dollars. However, the rule of section 563(b) (second sentence) is a mechanical creature which we must apply without the insertion of any equitable leeway. Darrow v. Commissioner, 64 T.C. 217 (1975). For the reasons above, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. Sec. 542(b) provides special rules for corporations filing consolidated returns, and sec. 542(c)↩ exempts certain corporations from personal holding company status. Neither or those sections is applicable in this case. 3. Since Mrs. Sundstrom was the sole common shareholder of Camera during Camera's entire fiscal year ending July 31, 1974, the sec. 542(a)(2) stock ownership test was clearly met for that year. But, the answer is not clear with respect to Camera's fiscal year ending July 31, 1975, because Mrs. Sundstrom died on Jan. 11, 1975, which was before the beginning of the last half of that taxable year. However, petitioner bears the burden of proof on this issue, sec. 6902(a)↩, and offered no evidence concerning the ownership of Camera's stock during the last half of Camera's fiscal year ending July 31, 1975. See generally sec. 544(a).
4. In the stipulation of facts, $ 12 of "other income" was treated as AOGI for Camera's FYE 7/31/74. If such were true, OGI and AOGI for that year would be $ 11,940 instead of $ 11,928. However, on brief, respondent concedes that the $ 12 is capital gain properly excludable from OGI and AOGI. See sec. 543(b)(1)(A)↩.
5. Although Camera reported $ 7,980 as "gross rents" in its returns for both of the fiscal years involved herein, the parties agree that $ 7,980 represents "adjusted income from rents." See sec. 543(b)(3)↩.
6. We note that whether an election to carry back dividends is necessary for the purpose of excluding rents from PHC income under sec. 543(a)(2) presents a close question of statutory construction involving a confusing series of code section cross references. For an analogous problem see Fulman v. United States, 434 U.S. 528 (1978). Interestingly, respondent, in his proposed regulations promulgated under sec. 543(a)(2), takes the position that an election is deemed made without any affirmative taxpayer action. Prop. Reg. sec. 1.543-5(c)(2)(i), 33 Fed. Reg. 12560↩ (Sept. 5, 1968). That proposed regulation is inconsistent with respondent's position in this case that an affirmative election is required.
7. Even though some dividend amounts might be carried back without an affirmative taxpayer-corporation election for purposes of sec. 543(a)(2), no carryback for purposes of the dividends paid deduction is permitted absent an affirmative election. See sec. 563(b) (first sentence). Camera made no election to carry back any dividends; therefore, the amount of the personal holding company tax was properly determined without reference to sec. 563↩ dividend carrybacks.
8. Arguably, if $ 80 of the $ 2,800 dividend actually paid during Camera's FYE 7/31/75 were carried back to Camera's FYE 7/31/74, only $ 2,720 of actual FYE 7/31/75 dividends would remain, resulting in a $ 544 (20 percent of $ 2,720) maximum carryback to FYE 7/31/74, and we do not make that presumption. See sec. 563(b)(2)↩ (last clause). 9. See note 7, supra↩.