**KNIGHT NEWSPAPERS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9647.

Circuit Court of Appeals, Sixth Circuit.

July 24, 1944.

John D. Wortman, of Akron, Ohio (C. Blake McDowell, Edwin W. Brouse, and John D. Wortman, all of Akron, Ohio, on the brief), for petitioner.

Maryhelen Wigle, of Washington, D.C., (Samuel O. Clark, Jr., Sewall Key, and Maryhelen Wigle, all of Washington, D.C., on the brief), for respondent.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

SIMONS and McALLISTER, Circuit Judges.

The Commissioner determined a deficiency in the income tax return of the petitioner for the period July 1, 1939, to December 31, 1939, by including in the petitioner's income a dividend, subsequently rescinded, on the common shares of an affiliate, thereby creating for the petitioner an undistributed Subchapter A net income, subject to a personal holding company surtax under § 500 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 500. The petitioner challenges the inclusion of the dividend as income because it was beyond the authority of the affiliate to declare, and, having been rescinded, was not gain capa-

ble of distribution to stockholders. The Tax Court sustained the Commissioner, and the petitioner seeks review.

The petitioner is an Ohio corporation organized in 1941 as successor to the Beacon Journal Company, which had been in existence since 1897. The Beacon Journal Company had been engaged in publishing the Akron Beacon Journal, a daily newspaper, at Akron, Ohio, and had other interests. On September 1, 1938, in order to effect a consolidation with the Akron Times-Press Company, without giving the stockholders of that company an interest in other activities of the Beacon Journal Company, the assets of the Beacon Journal Company were transferred to a new corporation, Beacon Journal Publishing Company, which also acquired the assets of the Akron Times-Press Company. The Beacon Journal Company received all of the stock of the new company and transferred 30% of it to the Akron Times-Press Company. The result was that after September 1, 1938, the Beacon Journal Company, of which the petitioner is the successor, owned 70% of the capital stock of the Beacon Journal Publishing Company and ceased to be an operating company. It also owned all of the outstanding common stock of the Miami Herald Publishing Company, a Florida corporation, publishing a daily newspaper in Miami, which it had acquired in 1937. The Miami Herald Publishing Company also had outstanding an issue of preferred stock.

From September 1, 1938, to December 31, 1939, 70% of the Beacon Journal Company's income was derived from its affiliates. It is conceded that this was personal holding company income as defined by § 502 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 502. It is also conceded that during that period more than 50% in value of its outstanding shares was owned directly or indirectly by not more than five individuals. It is agreed, therefore, that petitioner was, during the period, a personal holding company. On December 30, 1939, the directors of the Miami Herald Publishing Company declared a dividend of $7 per share for the year 1939, upon its common stock, and the amount thereof accruing to petitioner was $239,600. This was credited on the books of the Herald on an account exceeding it, then owing by the petitioner to the Herald. In its income tax return for 1939, the Herald reported the dividends as paid in cash to its stockholders, and the petitioner likewise reported its dividends from the Herald as income for the period July 1, to December 31 of that year, the petitioner being upon the accrual basis of accounting, and having changed in mid-year from a fiscal to a calendar-year basis.

At the time it declared the common stock dividend, the Herald had outstanding $650,-000 par value, preferred stock. The preferred stock certificates recited that the corporation could declare and pay dividends out of surplus only if current assets exceeded current liabilities by $65,000 after the payment of such dividend. At a meeting of its directors, on December 2, 1940, it was concluded that the Herald did not, on December 30, 1939, have an earned surplus sufficient to pay the common stock dividend, and a resolution was adopted declaring it illegal and void, repealing and rescinding it, and directing the officers to cancel the credit given to the Beacon Journal Company and to reinstate upon the books the amount owing to the corporation by that company. In pursuance of such direction the Herald canceled the credit and the petitioner recharged the Herald in an amount equal to the rescinded dividend.

The claim that the Herald dividend was illegally declared is now based not only upon the contention that its current assets did not exceed its current liabilities by $65,-000, as required by its preferred stock certificates, but also that the dividend was not paid out of surplus as required by Florida law. In support of the first contention, the balance sheet of the Herald, as of December 31, 1939, was offered in evidence, showing current liabilities to be $52,000 in excess of current assets. The Tax Court held this evidence to be insufficient to overcome the presumption that the Commissioner acted correctly because the balance sheet is dated December 31, while the dividend was declared and credited December 30, and also because the entries constituting current items both of assets and liabilities, were not explained. In its opinion it pointed out that the last day of the tax year is of great importance in an accounting for tax purposes, and there was nothing to show that important changes did not take place between the declaration and crediting of the dividend and the close of the year. It also pointed out that items of assets and liabilities might or might not be considered current, in the absence of detailed explanation.

It appears, however, that the case was tried before the Tax Court upon an agreed statement of facts, and when decision was entered against petitioner, it was based, according to the opinion, largely upon grounds that certain balance sheets and statements, introduced in evidence by petitioner, were not dependable as proof of the excess of liabilities over assets subsequent to the declaration of the dividend in question, and that petitioner had, therefore, failed in its proof.

Petitioner then filed a motion for rehearing, setting forth that it had been intended, both by respondent and by petitioner, to stipulate that the balance sheets in question were to be taken as the true statement of the condition of the companies immediately after the payment of the dividend; that it had assumed that the statements clearly reflected the relation of quick assets and quick liabilities under accounting practice; that it had been the intention of petitioner and respondent to agree that the quick assets did not exceed the quick liabilities of the Miami Herald Publishing Company after the dividend had been paid or credited to the account of the petitioner; that it was understood by petitioner and respondent that the preferred stock of the Miami Herald Publishing Company was not owned by the petitioner; and that it was clearly due to oversight that these understandings were not included in the statement of agreed facts. It was further set forth that there was no dispute as to these matters, and that it had been a "complete error and mistake for their not having been inserted." These allegations were not disputed, and no opposition was filed to the motion for rehearing.

The Tax Court denied the motion on the ground that, regardless of the references in its opinion, to such facts as not having been proved, the question in controversy was correctly decided on other grounds, without taking the statements and balance sheets into consideration. It is not to be assumed that the Tax Court would have denied the petition for rehearing if, in its view, facts established by the rejected proofs would have required a contrary result. The exercise of a sound discretion would seem to require that the court permit the taxpayer to establish facts which the parties to the litigation had, in good faith, considered covered by a stipulation. Ohio Valley Rock Asphalt Co. v. Helvering, 68 App.D.C. 176, 95 F.2d 87; Lamson

Building Co. v. Commissioner, 6 Cir., 141 F.2d 408, decided March 20, 1944.

On this appeal, we shall, therefore, assume that declaration of the dividend and the credit granted were contrary to the provisions set forth in the preferred stock certificate; that the result was that the current assets of the company did not exceed current liabilities after the payment of the dividend. It is not clearly apparent from the evidence that the declaration of the dividend was due to a mistake on the part of the directors. But, from the circumstances surrounding their action, there is no evidence of willful breach of contract or any suggestion of intentional wrongful conduct; and we shall accordingly assume that the dividend was declared as a result of mistake on the part of the directors; and that the declaration of the dividend was seasonably rescinded, and the credit to the common stockholders, canceled upon such rescission.

Since the decision in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, it has been thought to be the rule that "if a taxpayer receives earnings under a claim of right without restriction as to its disposition, he has received income which he is required to return (for tax purposes), even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." The rule was followed and applied in Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122; National City Bank v. Helvering, 2 Cir., 98 F.2d 93; Griffin v. Smith, 7 Cir., 101 F.2d 348, certiorari denied 308 U.S. 561, 60 S.Ct. 73, 84 L.Ed. 471. It was said in the National City Bank case [98 F.2d 96] that "although taxes are public duties attached to the ownership of property, the state should be able to exact their performance without being compelled to take sides in private controversies," and also that "collection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant. If he holds with claim of right, he should be taxable as an owner, regardless of any infirmity of his title; no other doctrine is practically possible, and no injustice can result." Our own decisions in an earlier period foreshadowed the doctrine of North American Oil Consolidated v. Burnet, supra. In Board v. Commissioner, 6 Cir., 51 F.2d

73, we held that a trustee who accepted a profit to which he was not entitled, was liable to return it as income in the year received even though his right to retain it was not fixed until six years later. And in Ford v. Commissioner, 6 Cir., 51 F.2d 206, certiorari denied 284 U.S. 666, 52 S.Ct. 41, 76 L.Ed. 564, we reached a like result. The decision in Commissioner v. Turney, 5 Cir., 82 F.2d 661, is, perhaps, contra, but that case was by a divided court, was based upon an interpretation of a Texas statute, is thereby distinguished from the Burnet case, and runs counter to the clear weight of authority.

The cases cited, however, deal with the incidence of the general income tax, and it has been pointed out that no great injustice results in regarding tentative or contingent gains as income when received, since, if repayment is subsequently required, allowable deductions in a later year would roughly recompense the taxpayer for the tax paid in an earlier year. Here, however, a surtax of some 65 to 75% is involved, and this cannot be recovered by a deduction for loss claimed in a subsequent year, since tax saving would then be limited by application only of the normal income tax rate. The personal holding company surtax is not, it is urged, a true tax, but a penalty. Its purpose is to force distribution of profits by a corporation so that they will be subject to taxation as income of shareholders. This has been noted in many cases, including General Securities Co. v. Commissioner, 10 Cir., 123 F.2d 192; Pembroke Realty & Securities Corp. v. Commissioner, 2 Cir., 122 F.2d 252. So, it is insisted, the rule of the Burnet case is not applicable, and even if the statute covers such income, it certainly was not within the intention of the Congress to treat contingent gains as income subjecting a holding company, not organized for tax evasion purposes, to the severe penalties of the Act. Administrative necessity does not require such onerous result. It is within the power of the court to declare a thing which is within the letter of the statute, not governed by the statute, because not within its spirit or the intention of its makers. Pembroke Realty & Securities Co. v. Commissioner, supra; Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

The result of the decision of the Tax Court is undoubtedly a harsh one. The dividend upon which the tax was determined was only a book entry, has been rescinded, and petitioner has never received the money. When its directors, who were also the directors of the Herald Company, assented to the declaration of the Herald dividend, they were under the impression that the petitioner was not a personal holding company and so subject to the onerous holding company surtax. The petitioner was not organized for purposes of tax evasion, and it has been absolved by the Tax Court from any penalty, in addition to the surtax, for willful neglect in failing to file a personal holding company return. For almost half a century it had been an operating company publishing a newspaper, and it had become the owner of stock of the Beacon Journal Publishing Company only because of the fact that the owners of the Akron Times-Press Company were not to share ownership in other assets than those devoted to the publishing of the Akron paper, and without intention that the petitioner was to embark upon a business of holding other corporations.

We come, then, to the consideration of circumstances, which appear to distinguish this case from those relied upon by respondent, and address ourselves, first, to the matter of the limitation upon the right of the corporation to declare dividends on the common stock. The provision in the preferred stock certificates, issued by the Miami Herald Publishing Company, that a dividend on common stock could be declared and paid by the directors out of surplus only if the current assets exceeded the current liabilities in the sum of $65,-000 after the payment of such dividend, obviously, was for the protection of the preferred stockholders, and a condition on which they acquired such preferred stock. If the declaration of a dividend in violation of this provision might be said to have been consented to by the corporation and the common stockholders, and thereby ratified by them, such action could not be considered a ratification of a voidable transaction. There remained the chief parties concerned in the declaration of such a dividend—the preferred stockholders—and no acquiescence of the directors or common stockholders could bind them, or result in ratification. If the questions were to be considered and determined upon the point

of whether the declaration and credit of the dividend were a voidable or void transaction, it would seem that it would be one to be denominated void, as being beyond the power of the directors or the common stockholders to ratify or affirm. However, a discussion of the distinction between void and voidable acts leads to confusion and difficulty in laying down a rule for determination of tax cases, and it is preferable, under the circumstances, to consider the issue from a somewhat different viewpoint.

■ ■ Constructive trusts arise out of operation of law and are raised to prevent injustice; they depend upon equitable principles, and are imposed in those cases where it would be inequitable to do otherwise. One of the grounds upon which a constructive trust is based is mistake of fact. Where property is transferred under mistake of fact, equity impresses upon it a constructive trust when necessary to prevent a failure of justice; and the party that receives such property is treated as a trustee, rather than as an owner. See In re Berry, 2 Cir., 147 F. 208; Reed v. Kellerman, D.C.Pa., 40 F.Supp. 46.

On this appeal, as has been said, we must assume that the dividend was declared under a mistake of fact. It was in violation of the rights of preferred stockholders. The common stockholder, who, instead of receiving cash, received credit on a debt owed, received such credit because of the mistake. To permit the receipt of such dividend at the expense of the clearly defined rights of the preferred stockholders, would result in an injustice. It was never claimed by the common stockholder that it was entitled to the dividend. There was no controversy pending at any time, about the facts. When, as alleged, the preferred stockholders called attention to the situation and entered complaints, the directors rescinded the declaration and canceled the dividend and credit given. These circumstances command application of the constructive trust doctrine in this case, not only because the dividend was declared and received as a result of mutual mistake, at the expense of preferred stockholders, but also, for the reason that unusual hardship and injustice would be suffered by all parties concerned as a result of the mistake—unless the common stockholder receiving the dividend were held to be a constructive trustee therefor. For, otherwise, petitioner would be required to make pay-ment of a personal holding surtax in the amount of $121,086.87, for failing to distribute accumulated income when there was no accumulation and no income to distribute, and, at the same time, the company declaring the dividend would be denied a dividend-paid credit, because of the rescission.

■ Under the foregoing circumstances, it should be held that the receipt of the dividend gave rise to a constructive trust and petitioner thereby became a constructive trustee of the dividend. The effect, of course, of such a determination is that petitioner never became the owner of the dividend and, hence, did not receive the income for which it has been taxed. To be sure, such a conclusion depends upon proof of the facts that have been assumed, and on a further hearing before the Tax Court, such an assumption may prove unwarranted.

Respondent relies chiefly upon North American Oil v. Burnet, supra, National City Bank v. Helvering, supra, Board v. Commissioner, supra, and Ford v. Commissioner, supra. In the North American case, the income was actually received by the taxpayer, and the only question was whether it was taxable income in 1917, or 1916. In 1916, a receiver had been operating the property, and the income received that year was subsequently paid to the taxpayer, in 1917, on entry of a decree of the district court. Although final appeals from the decree were not concluded until 1922, the court held that the income was taxable for the year in which it was received by the taxpayer.

In the National City Bank case, a corporation president received, in a secret, fraudulent transaction, several hundred thousand dollars as a bonus. He did not disclose to the corporation the receipt of the property, but commingled it with his own property and spent the dividends. When the circumstances began to be investigated by a Senate committee, the official in question left for France, where he remained for four years. He thereafter pretended that he was holding the alleged bonus in trust for the company and, through the compulsion of fear, gave an order for its return to the corporation. The court found that he had received the property with intent to claim it as his own and had converted a large part of it, and that he probably thought, by not reporting it as income, he

could perpetrate a fraud on the Treasury, which would inure to his own advantage.

In Board v. Commissioner, a director had received income which he never refunded, and the only question was whether it was income for the year 1920, or 1927. The court held that it should be considered income for 1920, when it was actually received, rather than for 1927, when his right to retain it was established. In the Ford case, petitioners had received income and had never attempted to repay it. Under the state law there prevailing, an order of distribution in a certain estate was prematurely made in 1920, and the property had been distributed in 1921 and 1922. Petitioners had paid income taxes for both years. The state court held that the distribution was premature, with the effect that the distributees (who were the petitioners) were holding in trust for the executor—but the executor, in turn, was holding in trust for the distributees, until a valid order of distribution was entered. The valid redistribution was made in 1922. The court held that the income tax was payable for 1922, inasmuch as the petitioners had, in law, received the 1921 and 1922 dividends on the property distributed in that year.

In all of these cases, the income was actually paid over and received by the taxpayers, and was never refunded, except in the National City Bank case, where the funds were returned under compulsion. In its facts, the present controversy differs in substance from the foregoing cases. Here, there was mistake on the part of the directors, resulting in violation of the rights of preferred stockholders. No claim of right resulting from the directors' actions was ever asserted by any one. The Government was not compelled to take sides in a private controversy in order to establish the actual facts. There was no tax evasion or tax benefit sought through the transaction; there was no economic gain resulting to the stockholder taxed for receipt of the dividend. Moreover, in none of the cases relied upon by respondent were there any circumstances giving rise to a constructive trust, except in the National City Bank case; but that decision is to be here reconciled on the ground that, notwithstanding the evidence that might there give rise to a constructive trust, the official was liable for the tax because he undertook to perpetrate a fraud, converted the fund to his own use, and, therefore, for

tax purposes, such fund was properly income to be returned. There had been an actual receipt of income on the entire transaction, and tax thereon was payable. For the foregoing reasons, the authorities cited are not here applicable.

It should be here remarked that nothing in the evidence or the authorities referred to by petitioner indicates that the declaration of the dividend was contrary to the law of Florida.

This case should be remanded to the Tax Court for the taking of further evidence, presenting the facts with more precision than the statement of agreed facts heretofore submitted, and if such evidence establishes that the current assets of the Herald did not exceed its current liabilities by the amount required by its preferred stock certificates, the Tax Court is directed to set aside the Commissioner's determination of the taxpayer's deficiency in so far as it is based upon the inclusion of the Herald dividend as income of the taxpayer in the period involved.

In accordance with the foregoing, the case is remanded to the Tax Court for further proceedings, not inconsistent with this opinion.