ROD WARREN INK, A CORPORATION, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 43425-86.     Filed May 11, 1989.

*Harley J. Williams, Ronald L. Blanc,* and *Daniel J. McLoon,* for the petitioner.
*H. Lloyd Nearing* and *Roger L. Kave,* for the respondent.

## OPINION

COHEN, *Judge:* Respondent determined deficiencies of $33,723, $97,366, $86,233, and $739 in petitioner's Federal income tax for taxable years ended March 31 of 1979, 1980, 1981, and 1983, respectively. The issue for decision is whether for purposes of the personal holding company tax imposed by section 541 theft losses are deductible only in the year of discovery by the taxpayer. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue.

All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference.

### Background

Petitioner was a California corporation whose principal place of business was in Sherman Oaks, California, when it filed the petition. Rodney Warnken (Warnken), a writer and producer of television specials, was petitioner's president,

sole director, and sole shareholder at all relevant times. Petitioner's gross income (writer's and production fees) for the years in issue, as reported in its tax returns, was attributable to the services performed by Warnken as petitioner's employee pursuant to personal service contracts. At all relevant times petitioner was a personal holding company as defined by section 542.

During the fiscal years ended in 1979 through 1982 (the applicable years), petitioner employed Harvey Glass, a business manager and accountant (the manager), to control its financial affairs. The manager's duties included responsibility for the preparation of petitioner's internal and external financial data and Federal income tax returns. The manager also served as an officer (Secretary) of petitioner and in such capacity prepared and signed all checks issued by petitioner.

During the applicable years the manager used his position and powers to steal $296,624 from petitioner and to deceive petitioner into believing that the stolen money was actually being expended for approved, legitimate corporate expenses, including pension plan contributions, and corporate income tax payments and withholding tax on compensation paid to Warnken. Although corporate funds were allocated for the purposes mentioned, most of such amounts were never physically delivered to their intended recipients.

In November 1981 Warnken discovered the thefts and learned that no income tax returns had been filed by petitioner for the applicable years. Upon discovery of the theft losses, petitioner immediately terminated the employment of the manager. Thereafter, Warnken and contractors hired by him attempted to reconstruct the actual financial results of petitioner's business operations during the applicable years.

In filing its returns for the applicable years, petitioner claimed the following theft loss deductions for the stolen amounts in the years that the thefts occurred:

| TYE | Amount of theft loss deduction |
| --- | --- |
| Mar. 31, 1979 ...................................... | $33,715 |
| Mar. 31, 1980 ...................................... | 116,160 |
| Mar. 31, 1981 ...................................... | 132,073 |
| Mar. 31, 1982 ...................................... | 3,565 |

Petitioner's deductions for the taxable years ended in 1979 through 1982 also included compensation paid to Warnken of $87,959, $30,161, $47,749, and $115,000, respectively.

In his notice of deficiency, respondent disallowed the theft loss deductions for taxable years ended 1979 through 1981, determining instead that the theft losses were deductible in the year that Warnken discovered the thefts—the taxable year ended March 31, 1982. Respondent applied this determination to both (1) the calculation of petitioner's taxable income (for purposes of computing petitioner's regular corporate income tax), and (2) the calculation of petitioner's undistributed personal holding company income (for purposes of computing petitioner's personal holding company tax). Consequently, respondent determined that petitioner sustained a net operating loss of $308,636 for the taxable year ended March 31, 1982, of which $296,624 related to the theft loss. Respondent carried back the loss to each of the 3 previous taxable years and adjusted petitioner's taxable income accordingly. Respondent did not carry back the net operating loss to reduce petitioner's undistributed personal holding company income for those years. Respondent calculated petitioner's undistributed personal holding company income for the taxable years ended in 1979, 1980, 1981, and 1983 to be $48,176, $142,612, $122,373, and $1,451, respectively.

On October 22, 1984, Warnken died, leaving his estate as the sole shareholder of petitioner.

### Discussion

A personal holding company (PHC) is subject to a special tax, in addition to the regular corporate income tax, on its undistributed personal holding company income (undistributed PHC income). Sec. 541. For 1979, 1980, and 1981, the taxable rate for undistributed PHC income was 70 percent; for 1983, the rate was 50 percent. Sec. 541.

Section 545 defines undistributed PHC income as "the taxable income of a personal holding company," adjusted as set forth in subsections (b), (c), and (d) of section 545 and reduced by the dividends paid deduction provided by section 561. Among other adjustments to taxable income, the net operating loss carryback and carryforward rules of

section 172 are not to be taken into account in calculating undistributed PHC income. Sec. 545(b)(4).

In calculating taxable income, a corporation is entitled to deduct losses arising from the theft of property. Sec. 165(a), (c)(3). Under section 165(e), theft · losses are considered sustained "during the taxable year in which the taxpayer discovers such loss." The enactment of section 165(e) in 1954 arose from Congress' concern for the taxpayer who discovers the theft loss after the statute of limitations period has run for the year in which the theft loss occurred and for the "considerable uncertainty and litigation" about when a theft loss is sustained under section 165. H. Rept. 1337, 83d Cong., 2d Sess. 21, A46 (1954). See *Marine v. Commissioner*, 92 T.C. 958 (1989).

We must decide whether petitioner had undistributed PHC income for each of the years in issue. Resolution of this issue turns primarily on whether, for purposes of computing undistributed PHC income, petitioner's theft losses are deductible from taxable income in the year of occurrence, rather than the year of discovery.

Respondent argues that "taxable income" under section 545 must take into account only adjustments there specified. Respondent thus contends that for purposes of computing petitioner's undistributed PHC income in each taxable year, section 165(e) applies, and petitioner is not entitled to theft loss deductions prior to the year of discovery, here the year ended March 31, 1982.

Petitioner's main argument is that considerations of legislative intent and equity require that we interpret section 165(e) as being inapplicable to the calculation of a corporation's undistributed PHC income. Petitioner asserts that the PHC rules generally take a year-to-year approach to calculating undistributed PHC income, so that early accumulations cannot be sheltered by subsequent deductions. Petitioner also contends that section 165(e), enacted to avoid the potentially harsh impact of the statute of limitations upon a taxpayer suffering theft losses, was designed for regular income tax purposes. Petitioner maintains that to require a theft loss to be deducted in a year other than in the year in which the theft loss occurred for purposes of calculating undistributed PHC income would

distort the year-to-year approach under which Congress intended the undistributed PHC income to be calculated.

Petitioner contends that an "injustice" of applying section 165(e) to the calculation of undistributed PHC income arises in situations, as in this case, where a PHC suffers a theft loss that it does not discover until a later year. Petitioner contends that the corporation in the earlier year invariably will be found to have undistributed PHC income in the amount of the theft loss because the stolen funds cannot be deducted from gross income on any theory other than as a theft loss, and under section 165(e) must be deducted in the later year of discovery; the theft loss cannot be carried back to eliminate the undistributed PHC income; and discovery of the theft loss following the due date of the income tax return for the earlier year and unavailability of the stolen funds preclude resort to the statutory methods for avoiding PHC tax, i.e., payment of dividends. See secs. 547, 561-565. Petitioner concludes that the corporation "is trapped through no fault of its own."

We and other courts have consistently interpreted the PHC provisions strictly. In *Darrow v. Commissioner,* 64 T.C. 217 (1975), a corporation declared dividends in March 1968 (fiscal year 1968) in an attempt to avoid PHC tax for that year. The corporation delayed payment of the dividend, however, until September 1968 (fiscal year 1969). The taxpayer advanced the policy argument that, because the corporation's shareholders reported the dividends paid in September 1968 as income on their calendar year 1968 tax returns, the abuses that Congress attempted to remedy by the personal holding company provisions were not present. The taxpayer hence argued that the dividend should be deemed paid during the corporation's 1968 fiscal year to prevent the imposition of the PHC tax. This Court strictly applied the PHC provisions, concluded that the corporation paid the dividends in fiscal year 1969, and sustained the Commissioner's determination that the corporation was liable for the PHC tax. We stated, "Despite any harshness or other subjective factors which may be present, if a company fits the literal description of a PHC contained in the Code, and if it has undistributed PHC income as defined

in the statute, imposition of the 70-percent tax is a matter of course." *Darrow v. Commissioner*, 64 T.C. at 222.

In *Transportation Service Associates, Inc. v. Commissioner*, 149 F.2d 354, 355 (3d Cir. 1945), affg. a Memorandum Opinion of this Court, the taxpayer claimed deductions for certain sums of money paid out for personal services, salaries, and interest. The Commissioner disallowed the deductions. The taxpayer contended "that while the disallowed items might properly be restored to income for income and excess profits tax purposes, they should not be included for the imposition of liability for personal holding company surtax." *Transportation Service Associates, Inc. v. Commissioner*, 149 F.2d at 355. The taxpayer's rationale was that because corporate funds were actually paid out and therefore not in the corporation's treasury, the theory of the personal holding company surtax was inapplicable. The Court of Appeals disagreed with the taxpayer, holding "that when an item is disallowed as a deduction, the amount of that item is necessarily chargeable to the taxpayer as income for the incidence of all taxes lawfully imposed." *Transportation Service Associates, Inc. v. Commissioner*, 149 F.2d at 355.

In *Morris Investment Corp. v. Commissioner*, 5 T.C. 583 (1945), affd. 156 F.2d 748 (3d Cir. 1946), this Court held and the Court of Appeals for the Third Circuit affirmed that the taxpayer corporation was subject to personal holding company tax, notwithstanding that the taxpayer was a deficit corporation at the beginning and end of the taxable year at issue.

We conclude that the plain meaning of sections 545 and 165(e) requires that petitioner's undistributed PHC income be predicated upon its taxable income and that in computing taxable income its theft losses be deducted only upon discovery by petitioner. There is no special adjustment to taxable income regarding theft losses under sections 545(b), (c), or (d); the allowance of a deduction for theft losses is limited to the rules for calculating taxable income. Thus, in computing petitioner's undistributed PHC income, petitioner is not entitled to deduct its theft losses prior to the taxable year ended March 31, 1982, the year of discovery. We

cannot ignore the terms of the statute even if a harsh effect results.

Petitioner also argues that if section 165(e) applies to this case, petitioner discovered the theft losses as they occurred by reason of the manager's knowledge. We disagree. When funds are embezzled from a corporation by a corporate officer, the corporate officer's knowledge of the embezzlement is not attributed to the corporation for purposes of section 165. See *Asphalt Industries, Inc. v. Commissioner*, 411 F.2d 13 (3d Cir. 1969), affg. a Memorandum Opinion of this Court. The principal reasons for this rule are (1) that in such situations the officer is virtually always acting outside the scope of his or her authority and (2) that to hold otherwise would contravene Congress' intent of deferring the running of the period of limitations on the theft loss deduction until the corporation has actual knowledge of the theft loss. See *Marine v. Commissioner*, 92 T.C. 958 (1989) (involving alleged theft by the general partner of a limited partnership). Accepting petitioner's position would be tantamount to rendering the theft loss deductible in the year of occurrence, irrespective of the time of the taxpayer's actual discovery, which Congress precluded by enacting section 165(e).

Finally, petitioner argues that because it was irrevocably committed to pay the amounts stolen to or for the benefit of Warnken—specifically, to pay Warnken's salary and personal tax liability through withholding and to contribute to its pension plan—the stolen funds represented constructive dividends to Warnken. As such, petitioner asserts that the funds were stolen from Warnken, instead of from petitioner.

Generally, constructive dividends during the taxable year are eligible for the dividends paid deduction under sections 561-562 and thus reduce the income subject to PHC tax. *Henry Schwartz Corp. v. Commissioner*, 60 T.C. 728, 747 (1973); cf. *R. H. Bouligny, Inc. v. Commissioner*, 45 B.T.A. 456 (1941). A corporate expenditure constitutes a constructive dividend only if (1) the expenditure does not give rise to a deduction on behalf of the corporation, and (2) the expenditure confers an economic benefit upon a shareholder. *P. R. Farms, Inc. v. Commissioner*, 820 F.2d 1084, 1088 (9th

Cir. 1987), affg. a Memorandum Opinion of this Court. To have a constructive dividend, the economic benefit must be afforded to the shareholder in his or her capacity as a shareholder. Sec. 1.301-1(c), Income Tax Regs. Thus, a benefit, reasonable in amount, paid to a shareholder in his or her capacity as a corporate employee is compensation and not a dividend.

The stipulated facts do not establish that the stolen funds represented constructive dividends to Warnken. Petitioner paid Warnken's salary during the years in issue. The stipulated purposes for which the funds were to be used—corporate income tax and withholding on Warnken's salary and contributions to petitioner's pension plan—suggest that only some of the funds were payable to or for the benefit of Warnken, and that they would be paid to him in his capacity as an employee, rather than as a shareholder. In any event, petitioner has not demonstrated that Warnken constructively received the funds, either as dividends, compensation, or deferred compensation. The stolen funds may have been allocated for the purposes alleged by petitioner, but the stipulated facts do not establish that the funds were irrevocably or unqualifiedly committed for such purposes. *Bush Bros. & Co. v. Commissioner*, 73 T.C. 424, 438-439 (1979), affd. 668 F.2d 252 (6th Cir. 1982); *Jerome Castree Interiors, Inc. v. Commissioner*, 64 T.C. 564, 568-569 (1975), affd. without published opinion 539 F.2d 714 (7th Cir. 1976).

We thus sustain respondent's determination of petitioner's PHC tax liability for the years in issue.

*Decision will be entered for the respondent.*