**ROD WARREN INK, a corporation, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–70328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1990.

Decided Aug. 20, 1990.

---

**326**

Ronald L. Blanc, Harley J. Williams, Richard T. McCoy, Blanc, Gilburne, Williams & Johnston, Los Angeles, Cal., for petitioner-appellant.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, David E. Carmack, Howard M. Soloman, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BROWNING and PREGERSON, Circuit Judges, and GEORGE,* District Judge.

GEORGE, District Judge:

## I. BACKGROUND

In this action, Rod Warren Ink (Ink) appeals from an adverse decision by the United States Tax Court. *Rod Warren Ink v. Commissioner,* 92 T.C. 995 (1989). The sole issue before this court is whether theft losses are deductible only in the year of discovery pursuant to section 165(e) [1] for purposes of calculating the personal holding company (PHC) tax imposed by section 541 et seq. [2] According to section 165(e), "any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." The tax court held that Ink could deduct its theft losses only in the year of discovery. Ink appeals to this court pursuant to sections 7482 and 7483. Since the appeal

presents a question of law, we review the tax court's decision on a de novo basis. *Klamath Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1282 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

The parties have stipulated to the primary facts. During the relevant years, Ink was a California corporation wholly owned by Rodney Warnken. Ink derived its income from Warnken's writing and producing of television specials. Between 1978 and 1981, Ink's business manager, Harvey Glass, embezzled $296,624 in cash from Ink. In November 1981, Warnken discovered the embezzlement, and he also discovered that Glass failed to file federal income tax returns during this period. Prior to his death in 1984, Warnken filed tax returns in which he deducted the theft loss in the years in which they occurred. For PHC tax purposes, the Commissioner determined that Ink could deduct the theft losses only in the year in which Warnken discovered the losses (the tax year ending March 31, 1982) rather than the year in which they occurred pursuant to section 165(e). The tax court affirmed the Commissioner's determination.

## II. DISCUSSION

■ As noted above, section 165(e) mandates reporting of theft losses in the year of discovery. Although this section's applicability appears clear, this does not end our inquiry. A court may look beyond a statute's clear meaning in exceptional circumstances. At least as long ago as *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930), the Supreme Court noted that a court may depart from a statute's literal meaning in cases of gross absurdity and contrary Congressional intent. *See also Watt v. Alaska,* 451 U.S. 259, 266,

* The Honorable Lloyd D. George, United States District Judge, District of Nevada, sitting by designation.

1. Unless otherwise noted, all statutory references will refer to the Internal Revenue Code which is contained in Title 26 of the United States Code.

2. A corporation qualifies as a personal holding company (PHC) if it generates over sixty percent of its adjusted gross income from personal service contracts, and if fewer than five individuals own more than fifty percent of its stock. The government derives a PHC's income by making various adjustments to its corporate income. Most importantly, while a corporation can carry back losses for corporate tax purposes, section 545(b)(4) prevents a PHC from carrying back losses for PHC tax purposes. The government then taxes any undistributed PHC income at a rate equal to the top marginal tax rate for individuals.

101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). In *Heppner v. Alyeska Pipeline Serv. Co.,* 665 F.2d 868, 872 (9th Cir.1981), we held that the reach of unambiguous language may be limited by judicial interpretation "when Congress uses more sweeping language than it would if it were attending carefully to fact situations, outside the scope of its purpose, to which the language might be erroneously understood to apply." A court may resort to the legislative history and context in such cases. *Id.*

In *Knight Newspapers, Inc. v. C.I.R.,* 143 F.2d 1007, 1010 (6th Cir.1944), the court noted that "[i]t is within the power of the court to declare a thing which is within the letter of the statute, not governed by the statute, because not within its spirit or the intention of its makers." *Knight Newspapers* involved an ultra vires dividend which the corporation subsequently rescinded. Based upon the statute, the court noted that this dividend would qualify as taxable income for the year in which the taxpayer received credit for the dividend. However, the taxpayer was unable to deduct it for PHC tax purposes when the corporation rescinded the dividend. The court determined that the taxpayer held the dividend as a constructive trust, and therefore, the taxpayer did not need to report it as income for PHC tax purposes.

Although stating that a court should not lightly invade Congress' function of writing legislation, the court, in *Abdalla v. C.I.R.,* 647 F.2d 487, 496–97 (5th Cir.1981), recognized the principle that a court may depart from a statute's literal language in order to avoid absurd and unintentional results. However, the court declined to apply this principle where doing so would have required rewriting several sections into an entire new statutory scheme. Since such action would have far reaching and unforeseen consequences, the court believed that legislative, not judicial, revision was necessary. *Id.* at 503.

■ Applying the above principles to this case, we conclude that a departure from the literal meaning of section 165(e) is warranted in order to avoid an absurd result and to effectuate Congress' intent. Congress enacted section 165 as a taxpayer relief measure in order to aid taxpayers victimized by theft or embezzlement. The House Report on section 165(e) notes that,

> [t]he regulations under present law indicate that generally ordinary losses can be taken only in the year in which they are sustained. In embezzlement and other theft losses, however, the taxpayer may not find out about the loss until the statute of limitations has run for the year in which the loss was incurred. The committee has adopted a provision which provides that theft losses can be deducted in the year in which the taxpayer discovers the loss, and only in that year.

H.R.Rep. No. 1337, 83rd Cong., 2nd Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4025, 4045–46. The House Report also notes that Congress drafted this section in order to clear up uncertainty in existing law as to the exact time of deduction. *Id.* at 4183.

No evidence exists that Congress even considered the impact of section 165(e) on the PHC tax scheme. Congress enacted the PHC tax scheme over twenty years earlier for an entirely different purpose. As the court noted in *Knight Newspapers,* the PHC tax is in reality a penalty rather than a tax. 143 F.2d at 1010. Given the nature of a PHC, an individual could keep money in the corporation for reinvestment while still retaining beneficial control. Congress designed the PHC tax scheme to prevent this accumulation of corporate income in order to take advantage of the then existing lower corporate tax rates. The *Knight Newspapers* court observed that, "[i]ts purpose is to force distribution of profits by a corporation so that they will be subject to taxation as income of shareholders." *Id.* Congress provided an easy way to avoid the assessment by the declaration of a dividend since the government taxes PHC income minus dividends paid by the PHC. Thus, a PHC could eliminate its PHC tax liability by declaring an appropriate dividend.

Forcing the taxpayer to report the loss only in the year of discovery for PHC purposes is contrary to the purposes and spirit of both section 165(e) and the PHC tax scheme. Although Congress enacted sec-

tion 165(e) as a taxpayer relief measure, under the unique factual pattern of this case, a literal application of section 165(e) would unduly penalize the taxpayer. Unlike the ordinary corporate tax scheme, section 545(b)(4) prevents a taxpayer from carrying back a loss to prior years for PHC tax purposes. A taxpayer who is already victimized by an embezzlement is not benefited by a strict application of section 165(e). Furthermore, Congress designed the PHC tax scheme to tax undistributed income. In this case, Ink was unaware that it had any undistributed income. In fact, given the secretive nature of the embezzlement, Ink could not have known of this income. Consequently, Ink was unable to declare a dividend thereby taking advantage of the avoidance mechanism approved by Congress. Moreover, it had no funds with which to declare a dividend given the embezzlement. Since Ink never recaptured the funds, it may not use this embezzled income to declare a deficiency dividend pursuant to section 547.[3] This is not the case of a taxpayer trying to avoid taxes by retaining income in the corporation. Finally, despite specific inquiry at oral argument, the government could not show that the approach advocated by Ink had or would produce any unforeseen or collateral consequences, cf. *Abdalla,* 647 F.2d at 503.

Thus, the peculiar facts of this case invite the court to grant the relief sought by Ink. We consider only the enforcement of this single literal interpretation of the Code. *Id.* at 498. Clearly, Congress did not intend for section 165(e) and the PHC tax scheme to function in such an inequitable and absurd manner. Given the PHC tax context, the court can find no reason for forcing Ink to declare income it never actually received, and then prevent Ink from offsetting this income through appropriate loss deductions.

REVERSED and REMANDED.

---

**3.** Section 547 creates a process which allows a PHC to eliminate undistributed PHC income for previous years through the declaration of a dividend.