WILLIAM W. WILLOUGHBY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Willoughby v. Commissioner
Docket No. 24025-87
United States Tax Court
T.C. Memo 1994-398; 1994 Tax Ct. Memo LEXIS 404; 68 T.C.M. (CCH) 428; 94-2 U.S. Tax Cas. (CCH) P47,960; August 18, 1994, Filed *404 An appropriate order will be entered denying petitioner's motion for summary judgment and granting respondent's cross-motion for summary judgment. For petitioner: Jeffrey A. Donner. For respondent: Patricia A. Taylor. COLVIN
COLVIN
MEMORANDUM OPINION COLVIN, Judge: This matter is before the Court on the parteis' motion and cross-motion for summary judgment under Rule 121. After concessions, [1] the issues for decision are: (1) Whether the time to assess tax for 1979 and 1980 has expired. This depends on the validity of consents to extend the statute of limitations for 1979 and 1980. We hold that the consents are valid and that assessment of tax from petitioner for 1979 and 1980 is not barred. (2) Whether petitioner is entitled to deduct for 1979 and 1980 theft losses for money embezzled by his agent in 1979 and 1980 but not discovered by *405 petitioner until 1990. We hold that he is not. We have examined the pleadings in this case and the memoranda, affidavits, and exhibits submitted by the parties. There is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure. Background
1. Petitioner
Petitioner lived in Englewood, New Jersey, when he filed his petition. By notices of deficiency dated May 27, 1987, respondent determined deficiencies in petitioner's Federal income tax of $ 22,633 for 1979 and $ 30,681 for 1980, and increased interest under section 6621(c) (formerly section 6621(d)) for 1979 and 1980. Petitioner was a professional basketball player for various teams in the National Basketball Association (NBA) from 1975 to 1984. 2. Petitioner's Agent: Jerry Davis
In 1975, petitioner hired Jerry A. Davis (Davis) to be his sports agent. Petitioner authorized Davis to receive *406 and control most of petitioner's income. Davis received most of petitioner's income from 1975 to 1984. Davis gave petitioner an allowance for living expenses and occasionally gave him advances against his salary when petitioner asked for them. Davis occasionally used petitioner's income to help support petitioner's parents and sister. In addition to his salary, petitioner was paid $ 12,000 a year for 10 years to be invested in an annuity on his behalf. Davis was supposed to invest these amounts each year in an annuity for petitioner, but did not do so. Davis misrepresented petitioner's financial situation to him from 1975 until mid-1986. Davis embezzled much of petitioner's income earned during this time. Petitioner began to suspect that Davis had defrauded him in 1986 but he was not certain until 1989 or 1990. Davis invested $ 25,000 in 1979 and $ 20,000 in 1980 for petitioner in the Jerry A. Davis Grantor Trust/Hayes Investment Limited Partnership (Hayes promotion). He did not tell petitioner about the investment. Later Davis received a settlement offer from respondent relating to the Hayes promotion. He did not tell petitioner about the offer. 3. Petitioner's *407 Tax Returns
Davis engaged an accountant, Norman Berkowitz (Berkowitz), to prepare petitioner's income tax returns for 1979 and 1980 using information Davis provided. Petitioner was not involved in preparing his 1979 and 1980 returns. Davis told him he was paying his taxes for 1975 to 1984, and petitioner thought Davis was doing so. Davis signed petitioner's income tax returns for 1979 and 1980. Those returns were filed on May 27, 1980, and November 24, 1981, respectively. Petitioner did not sign his 1979 and 1980 returns. On April 6, 1983, Davis submitted to the Internal Revenue Service a Form 872, Consent to Extend the Time to Assess Tax, extending the period to assess tax for 1979 to June 30, 1984. On November 9, 1983, Davis submitted a Form 872-A, Special Consent to Extend the Time to Assess Tax, extending indefinitely the time to assess tax for 1979. On October 25, 1984, Davis also submitted a Form 872-A for 1980, and a Form 2848, Power of Attorney and Declaration of Representative, naming Berkowitz as petitioner's representative. The Forms 872, 872-A, and 2848 purportedly bear petitioner's signature. However, petitioner did not sign them or authorize Davis to sign *408 them. 4. Litigation Between Davis and Petitioner
After petitioner left the NBA, Davis sued him to repay approximately $ 118,000 of advances made to petitioner from June 1980 to November 1986 (the State court proceeding). In December 1986, petitioner counterclaimed for breach of contract, negligence, breach of fiduciary duty, and fraud. By the time the discovery phase of the State court proceeding ended in late 1989 or early 1990, petitioner had learned that Davis had embezzled his funds. Petitioner testified in the State court proceeding in 1990 that Davis was authorized to sign his tax returns. Petitioner did not know what a Form 872 or a "consent" was. At the time of the State court proceeding (June to July 1990), he did not know that Davis had signed his name to the Forms 872, 872-A, and 2848 referred to above. Petitioner learned about the consents in June 1992. 5. Consideration of Petitioner's Tax Liability by the New Jersey Court
Robert Singer (Singer) was petitioner's expert witness in the State court proceeding. He used petitioner's 1975 to 1984 tax returns to estimate petitioner's income for those years. Singer calculated that Davis could not account *409 for $ 40,875 of petitioner's income for 1979 and $ 41,902 for 1980. Petitioner's attorney in the State court proceeding told the jury that petitioner's "total liability to the IRS is over $ 240,000" for 1979, 1980, 1981, and 1984 because of Davis' malfeasance. During the State court proceeding Davis denied executing Forms 872 for 1979 or 1980 (other than the Form 872 for 1979 that expired in June 1984) for petitioner. The State court jury awarded petitioner $ 85,742.85 for Davis' negligence relating to his failure to advise petitioner about Federal income tax investigations, liens, and penalties for 1979, 1980, 1981, and 1984 arising in connection with the disqualification of various tax shelters in which Davis invested petitioner's money. The jury awarded about $ 1.6 million to petitioner. In July 1990, the New Jersey court reduced the award to $ 868,047.84 to eliminate duplication between damages categories and to comport with petitioner's actual damages. In August 1990, Davis filed a chapter ll petition in bankruptcy with the U.S. Bankruptcy Court for the Southern District of New York. Petitioner was a creditor in this action. In May 1993 petitioner and Davis settled petitioner's *410 bankruptcy claim against Davis. Davis agreed to pay petitioner $ 425,000, plus interest, over 5 years. Davis paid petitioner $ 150,000 on May 25, 1993. Discussion
1. Whether the Period of Limitation Under Section 6501 Bars Assessment of Any Deficiency for 1979 and 1980
Respondent generally must assess a deficiency within 3 years after the filing of the return. Sec. 6501(a) and (b)(1); Mecom v. Commissioner, 101 T.C. 374, 38 (1993). The parties may consent to extend the period to assess tax if the consent is executed before the period to assess tax expires. Sec. 6501(c)(4); Mecom v. Commissioner, supra;Pleasanton Gravel Co. v. Commissioner, 85 T.C. 839, 852 (1985). It is undisputed that respondent sent the notices of deficiency for 1979 and 1980 more than 3 years after the returns were filed. Thus, respondent has the burden of going forward with evidence showing that the period to assess tax had not expired when the notices of deficiency were issued. Respondent met that burden by introducing into evidence consent agreements which purport to extend indefinitely the period *411 to assess tax for 1979 and 1980. J.H. Rutter Rex Manufacturing Co. v. Commissioner, 853 F.2d 1275, 1281 (5th Cir. 1988), affg. on this issue T.C. Memo. 1987-296; Concrete Engg. Co. v. Commissioner, 58 F.2d 566, 568 (8th Cir. 1932), affg. 19 B.T.A. 212 (1930). The burden of going forward then shifted to petitioner. To meet that burden, petitioner must show that the consents are invalid, e.g., that the parties who signed the consents acted without authority. Crown Willamette Paper Co. v. McLaughlin, 81 F.2d 365, 367 (9th Cir. 1936); Concrete Engg. Co. v. Commissioner, supra at 568; Adler v. Commissioner, 85 T.C. 535, 541 (1985). The parties agree that petitioner did not sign the Forms 872-A extending the time to assess tax for 1979 and 1980. Petitioner argues that the Forms 872-A were invalid because he did not sign them or authorize Davis or Berkowitz to sign them. Petitioner points out that 26 C.F.R. sec. 601.504(a)(3) (1993), requires a taxpayer to sign and file a *412 power of attorney to authorize his or her representative to execute a consent to extend the period for assessment. Petitioner did not execute a power of attorney for Davis or Berkowitz in this case. Respondent points out that petitioner testified in the State court proceeding that he had authorized Davis to sign his tax returns and other tax documents, and that he did not know of any tax documents, including a "consent", that he had not authorized Davis to sign for him. Respondent contends that we should not allow petitioner to selectively claim that the 1979 and 1980 returns filed for him are valid but the consents to extend the statute of limitations are not. Davis executed the extensions without petitioner's consent. However, petitioner, as principal, may be bound by the acts of Davis as to respondent, who had no reason to know of Davis' improper conduct. This is so even if Davis' actions did not benefit petitioner. Homes Sav. Association v. General Elec. Credit Corp., 101 Nev. 595, 708 P.2d 280, 283-284 (1985); 1 Restatement, Agency 2d, secs. '112 comment C, and 165 (1958). Davis had apparent authority to file returns for petitioner. *413 Restatement, Agency 2d, secs. 8 comment B, and 27 (1958). His disloyalty (i.e., embezzling money from petitioner) terminated his authority to act for petitioner. 1 Restatement, Agency 2d, secs. 112, 165 (1958). However, respondent did not know of Davis' disloyalty. Thus, Davis' disloyalty did not affect respondent's right to rely on Davis' apparent authority or Davis' power to bind petitioner to the transaction. 1 Restatement, Agency 2d, secs. 112 comment C, and 165 (1958). Accordingly, the consents to extend the statute of limitations for 1979 and 1980 are valid, and assessment is not barred. 2. Whether Petitioner May Deduct Theft Losses
A taxpayer may deduct a theft loss only in the tax year in which the taxpayer discovers the loss. Sec. 165(e); Asphalt Indus., Inc. v. Commissioner, 411 F.2d 13, 15-16 (3d Cir. 1969), affg. T.C. Memo. 1968-155. Davis embezzled money from petitioner in 1979 and 1980, but petitioner did not discover the embezzlement until 1990. Petitioner argues that he may deduct theft losses in the years of occurrence rather than in the year of discovery, citing Rod Warren Ink v. Commissioner, 912 F.2d 325 (9th Cir. 1990), *414 revg. and remanding 92 T.C. 995 (1989). In Rod Warren Ink, the Court of Appeals for the Ninth Circuit held that a personal holding company could deduct theft losses in the years the losses were sustained, rather than in the years the losses were discovered. Id. at 327-328. The Court limited its holding to the "unique factual pattern" presented, observing that "Forcing the taxpayer to report the loss only in the year of discovery for PHC purposes is contrary to the purposes and spirit of both section 165(e) and the PHC scheme," id. at 327, and that "a literal application of section 165(e) would unduly penalize the taxpayer." Id. at 328. Petitioner's reliance on Rod Warren Ink is misplaced. This case is appealable to the Court of Appeals for the Third Circuit, which has ruled that theft losses are deductible only in the year of discovery. Asphalt Indus., Inc. v . Commissioner, supra.FIn any even, Rod Warren Ink is distinguishable from the instant case because petitioner is not a personal holding company. Accordingly, *415 petitioner may not deduct theft losses in 1979 and 1980. To reflect the foregoing and concessions of the parties, An appropriate order will be entered denying petitioner's motion for summary judgment and granting respondent's cross-motion for summary judgment. Footnotes
1. The parties executed a stipulation of settled issues resolving the adjustments in the notices of deficiency relating to the Jerry A. Davis Grantor Trust/Hayes promotion.↩