T.C. Memo. 2000-293

UNITED STATES TAX COURT

CALYPSO MUSIC INCORPORATED, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12683-99.          Filed September 20, 2000.

P was incorporated by K. K is a motion picture
music editor and P's sole shareholder, director, and
officer. P contracted with motion picture studios for
K's services as a music editor. Each of the contracts
was memorialized, in part, by a "loan-out agreement" or
a "deal memorandum". Each contract made specific
reference to the services of K.

R determined P was a personal holding company as
defined in sec. 542 I.R.C. for its 1996 and 1997
taxable years. R also determined that P was liable for
accuracy related penalties under sec. 6662(a) I.R.C..

Held: P was a personal holding company for its
taxable years of 1996 and 1997.

Held, further: P in good faith and reasonably
relied on the return preparers for the position taken
on its returns and is not liable for penalties under
sec. 6662(a) I.R.C. pursuant to sec. 6664(c) I.R.C..

Patrick E. McGinnis, for petitioner.

Jonathan H. Sloat, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: Respondent determined deficiencies of $10,565 and $18,226 in petitioner's personal holding company tax for 1996 and 1997, respectively. Respondent also determined accuracy-related penalties under section 6662(a)[1] of $2,113 and $3,645[2] for 1996 and 1997 respectively. We must decide whether petitioner is subject to the personal holding company tax imposed by section 541 for its taxable years ending January 31, 1996, and 1997. Secondly, we must decide whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for each of those years.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of fact and attached exhibits are incorporated herein by this reference. Petitioner's principal place of business was in the State of California when the petition was filed.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Dollar amounts are rounded to the nearest whole dollar.

Daryl Kell is a highly regarded and eminently qualified music editor. Petitioner, through Daryl Kell, rendered music editing services for productions of feature films, television movies, and programs. The music editing service that petitioner provides involves the rental and use of petitioner's computer equipment. Music editing is an artistic and technical undertaking requiring judgment, artistic ability, and discretion. Daryl Kell's work as a music editor for petitioner's clients requires creative decision making. Music editing is a collaborative effort by all involved in a given production and involves forming very close relationships between music editors and those with whom they work.

Petitioner had taxable years ending on January 31 for each year in issue. At all times during the taxable years in issue, Daryl Kell owned 100 percent of petitioner's stock, and he was petitioner's sole officer and director. Other than officer's compensation paid to Daryl Kell, petitioner paid no salary or compensation to employees.

The International Alliance of Theatrical and Stage Employees (IATSE) is a union. In the productions in which petitioner was involved music editors were required to be members of IATSE. Daryl Kell was a member of IATSE. In order to employ a music editor who was a member of IATSE the employer was required to be a signatory to the IATSE agreement. Petitioner was not a

signatory company to the IATSE agreement.

Petitioner's music editing services were provided to the studios in accordance with a deal memorandum or a loan-out agreement which memorialized some of the terms of those contracts. Daryl Kell's personal services as a music editor were specifically designated as required in the deal memorandum and loan-out agreement. The loan-out agreement and deal memorandum provide that Daryl Kell "render music editorial services, whenever and wherever the producer may require." The payments made to petitioner were supplemented by payments to IATSE for benefits accruing to Daryl Kell under the IATSE agreement.

Petitioner's general ledgers were prepared by Jessica Shields-Hamper. Jessica Shields-Hamper is petitioner's and Daryl Kell's agent. Petitioner's 1996 tax return was prepared by Robert Fogelman, C.P.A. Petitioner's 1997 return was prepared by Steven McNulty of Feddersen & Co. C.P.A.(s).

For the 1996 tax year, petitioner reported total income of $133,977, of which the following amounts were for music editing services:

| Film | Editing Income |
|------|---------------|
| Fair Game | $70,227 |
| Moll Flanders | 28,955 |
| Other editing income | 10,415 |
| Total | 109,597 |

For the 1997 tax year, petitioner reported total income of $282,124, of which the following amounts were for music editing services:

| Film | Editing Income |
|------|----------------|
| Kazaam | $75,629 |
| The Associate | 71,722 |
| Breakdown | 65,694 |
| Moll Flanders | 1,063 |
| Other editing income | 8,350 |
| Total | 222,458 |

Petitioner's general ledgers for the 1996 and 1997 tax years reflect amounts received by petitioner from the studios for the rental of music editing equipment owned by petitioner.  For the 1996 and 1997 tax years, petitioner received rental income in the amounts of $24,400 and $68,100, respectively.[3]

OPINION

The personal holding company tax was originally enacted in 1934 to remedy the effects of the "incorporated pocket book" and "incorporated talent" which served to avoid the higher tax rates imposed on individuals.  Cedarburg Canning Co. v. Commissioner, 149 F.2d 526, 528 (7th Cir. 1945), affg. a Memorandum Opinion of this Court.  The purpose of the tax is to force corporations to distribute personal holding company income through the imposition of a tax in addition to the ordinary income tax imposed upon the

_____

[3] We have been unable to reconcile petitioner's 1997 ledgers which show editing income of $222,458 and rental income of $68,100 totaling $290,557 with petitioner's tax return which shows gross sales of $281,746.

corporation.  See <u>Fulman v. United States</u>, 434 U.S. 528, 531
(1978).  The additional tax is imposed by section 541, which
provides:

> In addition to other taxes imposed by this
> chapter, there is hereby imposed for each taxable year
> on the undistributed personal holding company income
> (as defined in section 545) of every personal holding
> company (as defined in section 542) a personal holding
> company tax equal to 39.6 percent of the undistributed
> personal holding company income.

A corporation is a personal holding company if two
requirements are satisfied.  See sec. 542(a).  Those two
requirements have been described as the "stock ownership" and
"tainted income" tests.  See <u>Kenyatta Corp. v. Commissioner</u>, 86
T.C. 171 (1986), affd. 812 F.2d 577 (9th Cir. 1987).  The "stock
ownership" test is satisfied if "At any time during the last half
of the taxable year more than 50 percent in value of * * * [the
corporation's] outstanding stock is owned, directly or
indirectly, by or for not more than 5 individuals."  Sec.
542(a)(2).  The "tainted income" test is satisfied where "At
least 60 percent of [the corporation's] adjusted ordinary gross
income (as defined in section 543(b)(2)) for the taxable year is
personal holding company income (as defined in section 543(a))".
Sec. 542(a)(1).  Section 543(a), which defines personal holding
company income, provides in pertinent part:

SEC. 543(a) General Rule.--
For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of:

*       *       *       *       *       *       *

(2) Rents.–The adjusted income from rents;

*       *       *       *       *       *       *

(7) Personal service contracts.--

(A) Amounts received under a contract under which the corporation is to furnish personal services; if some person other than the corporation has the right to designate (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and

(B) amounts received from the sale or other disposition of such a contract.

This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services.

At all material times, Daryl Kell owned all of the shares in petitioner. We therefore find that the stock ownership requirement of section 542(a)(2) was met for both the 1996 and 1997 tax years.

Next, we must determine whether the "tainted income" requirement of section 542(a)(1) has also been met. At least

60 percent of petitioner's adjusted ordinary gross income[4] for the taxable year must be personal holding company income to satisfy this requirement. Petitioner's adjusted ordinary gross income for 1996 and 1997 tax years was $133,977 and $282,124 respectively.

In pertinent part, section 543(a)(7) provides that petitioner's income from the performance of a contract for music editing services will be personal holding company income if the individual who is to perform the services is designated (by name or by description) in the contract and at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services.

In the 1996 taxable year $99,182 was received by petitioner for the editing services of Daryl Kell on the pictures Fair Game and Moll Flanders. The loan-out agreement and deal memoranda for these two pictures specifically

---

[4] "Adjusted ordinary gross income" is defined in sec. 543(b) as gross income minus gains from the sale or other disposition of capital assets or sec. 1231(b) assets, and minus depreciation, taxes, interest, and rent incurred in connection with certain rental income and mineral royalties. In the instant case, petitioner's adjusted ordinary gross income would equal its gross income.

designate Daryl Kell to perform the editing services.[5]  In the 1997 taxable year $214,106 was received by petitioner for the editing services of Daryl Kell on the pictures Kazaam, The Associate, Breakdown, and Moll Flanders.  The deal memoranda for these pictures also specifically designate Daryl Kell to perform the editing services.[6]  In the 1996 and 1997 taxable years Daryl Kell, the individual designated to perform the services for petitioner, owned more than 25 percent of the shares in petitioner.  Therefore, we find that the income received from the enumerated motion picture contracts was personal holding company income.  See Kenyatta Corp. v. Commissioner, supra at 184 (and cases cited therein).

---

[5] The deal memorandum for Fair Game provides: "EMPLOYER [Petitioner] hereby lends to PRODUCER [Warner Bros.] the exclusive services of EMPLOYEE [Daryl Kell]".  The deal memorandum for Moll Flanders provides: "Daryl Kell will provide music editing services for O'Trilogy Productions".  Additionally the Executive Vice President-Post production of Warner Bros. testified that Daryl Kell was the only person to perform the required services under the loan-out agreement.

[6] The deal memorandum for Kazaam provides: "Daryl B. Kell/Calypso Music Inc. will provide music editing services for Interscope Communications * * *"; "Daryl Kell will render music editorial services".  The deal memorandum for The Associate provides: "Daryl B. Kell/Calypso Music Inc. will provide music editing services for Interscope Communications * * *"; "Daryl Kell will render music editorial services".  The deal memorandum for Breakdown provides: "Daryl Kell (Editor) Calypso Music, Inc. (Lender) will provide music editing services to Dino DeLaurentiis Co. (Producer)"; "Editor [Daryl Kell] will render music editorial services".  The deal memorandum for Moll Flanders provides: "Daryl Kell will provide music editing services for O'Trilogy Productions".

The income received for editing services for Fair Game and Moll Flanders, personal holding company income, constitutes 74 percent of petitioner's adjusted ordinary gross income in the 1996 taxable year. The income received for editing services for Kazaam, The Associate, Breakdown, and Moll Flanders, personal holding company income, amounts to 76 percent of petitioner's adjusted ordinary gross income for 1997.

For the 1996 and 1997 tax years, petitioner's ledgers indicate it received rental income in the amounts of $24,400 and $68,100 respectively. Respondent determined that these amounts constitute personal holding company income as defined in section 542(a)(2). Respondent's determination is entitled to a presumption of correctness; petitioner bears the burden of proof to establish the determination is in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner advances no meaningful argument on brief that respondent's determination is erroneous. We therefore find that the rental income in the years in issue is personal holding company income.

We hold that petitioner is a personal holding company, as defined in section 542, for the 1996 and 1997 taxable years. As a consequence, petitioner is liable for personal holding company tax, imposed by section 541, equal to 39.6 percent of the undistributed personal holding company income for each of

the years in issue.

Respondent determined that petitioner was liable for an accuracy-related penalty, under section 6662(a) and (b)(1) or (2), for negligence or intentional disregard of rules and regulations or substantial understatement of income tax. Petitioner argues that it is not so liable.  Petitioner asserts that a certified public accountant prepared its returns and that the accountant had access to all of the materials now before the Court.  Petitioner argues that it reasonably relied on professional advice in preparing its returns and therefore should not be held liable for the accuracy-related penalty.

Section 6662(a) imposes a 20-percent accuracy-related penalty on the portion of an underpayment that is due to one or more of the causes enumerated in section 6662(b).  Respondent relies on subsections (b)(1) (negligence or intentional disregard of rules or regulations) and/or (b)(2) (substantial understatement of income tax).

Negligence includes a failure to attempt reasonably to comply with the Code.  See sec. 6662(c).  Disregard includes a careless, reckless, or intentional disregard.  See id.

A substantial understatement of income tax is defined to be the greater of 10 percent of the income tax required to be shown on the return for the taxable year or $5,000.  See sec. 6662(d).  In the instant case $5,000 is the greater amount for

the 1996 and 1997 taxable years. Respondent determined understatements of tax of $10,565 and $18,226 for the 1996 and 1997 taxable years, respectively.

No penalty shall be imposed, however, for either negligence or intentional disregard of rules or regulations or a substantial understatement of income tax to the extent that the taxpayer shows that the underpayment is due to the taxpayer's reasonable cause and good faith. See sec. 6664(c); secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs.

Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item. See United States v. Boyle, 469 U.S. 241 (1985); see also Estate of Young v. Commissioner, 110 T.C. 297, 317 (1998). The good faith, reasonable reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. See United States v. Boyle, supra; sec. 1.6664-4(b), Income Tax Regs.; see also Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991).

Whether a taxpayer relies on advice and whether such reliance is reasonable hinge on the facts and circumstances of the case and the law that applies to those facts and circumstances. See sec. 1.6664-4(c)(i), Income Tax Regs. A professional may render advice that may be relied upon

reasonably when he or she arrives at that advice independently, taking into account, among other things, the taxpayer's purposes for entering into the underlying transaction. See sec. 1.6664-4(c)(i), Income Tax Regs.; see also Leonhart v. Commissioner, 414 F.2d 749 (4th Cir. 1969), affg. T.C. Memo. 1968-98. Reliance may be unreasonable when it is placed upon insiders, promoters, or their offering materials, or when the person relied upon has an inherent conflict of interest that the taxpayer knew or should have known about. See Goldman v. Commissioner, 39 F.3d 402 (2d Cir. 1994), affg. T.C. Memo. 1993-480; LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991). Reliance also is unreasonable when the taxpayer knew, or should have known, that the adviser lacked the requisite expertise to opine on the tax treatment of the disputed item. See sec. 1.6664-4(c), Income Tax Regs.

In sum, for a taxpayer to rely reasonably upon advice so as possibly to negate a section 6662(a) accuracy-related penalty determined by the Commissioner, the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to

justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  See Ellwest Stereo Theatres, Inc. v. Commissioner, T.C. Memo. 1995-610; see also Rule 142(a).

We have no doubt on the record before us that Daryl Kell, petitioner's only officer, actually relied in good faith on the certified public accountants who prepared the returns.  We note that the 1996 and 1997 returns were prepared by different firms of public accountants.[7]  Petitioner was justified in its reliance on its advisers.  We find credible Mr. Kell's testimony that he made available all necessary information to the return preparers.  In this circumstance, we shall not sustain respondent's determination of the accuracy-related penalties.

Accordingly,

Decision will be entered

under Rule 155.

---

[7] Respondent argues petitioner did not offer the testimony of its return preparers, Robert Fogleman and Steven McNulty.  The failure to introduce the testimony of the return preparers which if true would have been favorable to petitioner, gives rise to the presumption that such testimony would not have been favorable.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  Having found Mr. Kell's testimony in this regard credible, we find the presumption overcome.